Statement of the Case.
MONROE, C. J.
Plaintiffs prosecute this appeal from a judgment sustaining an exception of no cause of action.
The plaintiff whose name appears in the title is the widow in community of James W. Jackson, who died in 1908; the other plaintiff, Mrs. Helen Jackson Cunningham, widow of M. J. Cunningham, Jr., is a daughter of the decedent- by his marriage with her cop'laintiff. In their respective capacities of widow in community and heir (alleging that T. Anderson Jackson is a son and coheir) plaintiffs sue to recover a certain tract of land of which defendant and his authors, claiming through mesne conveyance under a title translative of property, and executed by the deceased husband and father on November 7, 1905, appear to have been in possession for more than 10 years. The allegations of the petition which it seems necessary to consider are, in substance, as follows:
That in September, 1882, James W. Jackson, acquired, as community property, about 100 arpents of land near Opelousas; that in 1905, he became indebted to James T. Stewart for certain sums of money loaned him by Stewart, and that, desiring an additional loan and applying to Stewart therefor, he was informed that no further loan would be made upon his unsecured note, but that it would be made upon adequate mortgage security; “that the said James W. Jackson, for the purpose of pretending to obtain the notes to pledge to the said Stewart as collateral security for the money already borrowed and to be borrowed by him from the said Stewart, as aforesaid, conceived the idea of making a fraudulent, pretended, and simulated sale of the aforesaid described property to his son, the said T. Anderson Jackson, and, accordingly, on November 7, 1905, by act * * * duly recorded, * * * made a false, fraudulent, pretended, and simulated conveyance of the aforedescribed property to his aforesaid son, the nominal consideration for which, as stated in said act being the sum of $4,100, of which $100 was supposed to have been paid in cash, and the balance of said purchase price being represented by four certain promissory notes, each for the sum of $1,000' executed by the said T. Anderson Jackson and drawn to the order of the said James W. Jackson; * * * that, despite the written instrument * * * purporting to be a sale of the property aforesaid, it was not the intention of the said James W. Jackson to sell, nor the intention of the said T. Anderson Jackson to buy, the property, * * * and the recitals of said deed are false, fraudulent, and pretended, and constitute a mere sham and simulation; * * * that the aforesaid pretended sale, being false, fraudulent, and simulated, was an absolute nullity, * * * and in no manner divesting your petitioners of their right, title, and interest to the property, etc., which accrued to your petitioners upon the death of their aforesaid husband and father, on April 18, 1908; * * * that the said James W. Jackson, in furtherance of the true purpose and object of the fraudulent and simulated sale aforesaid, * * * pledged the aforesaid spurious notes of his said son * * * to the said James T. Stewart as collateral security to a personal note executed by the said *917 James W. Jackson in favor of the said James T. Stewart and amounting to $1,520.”
It is further alleged:
That the note for $1,520 fell due on December 31, 1907, that the maker, Jackson, was ill at that time, and so remained until April 18, 1908, when he died, and that the note was not paid; that on April 4, 1908, Stewart brought suit against T. Anderson Jackson on the two mortgage notes first maturing, and on May 7, 1908, obtained judgment thereon in the sum of $1,520 (representing the indebtedness of James W. Jackson) with recognition of vendor’s lien, and directing that the mortgaged property be sold, that Stewart be paid the $1,520, with interest at 8 per cent., and that the surplus of the price, if any, be paid to the estate of James W. Jackson, or his legal representatives.
“That the aforesaid fraudulent and simulated transaction between the said James W. Jackson and T. Anderson Jackson having been entered into and consummated at the behest and request of the said James T. Stewart, in order to afford him * * * collateral security for a loan made by him, * * * the said Stewart thereby became a party to said simulated and fraudulent transactions, or, at least, fully cognizant of its simulated character and of the spurious character of the notes so pledged to him, and obtained only such security as could arise from said simulated and fraudulent sale.”
It is alleged:
That, after obtaining said judgment, Stewart offered to pay the petitioner, Mrs. Jackson, in satisfaction of her community interest in the property in question $1,250, and that the offer was refused; that after the death of James W. Jackson, T. Anderson Jackson, being burdened with the judgment obtained by Stewart, “arising from an indebtedness contracted by his deceased father,” and “conceiving the fraudulent idea of endeavoring to maintain his fraudulent and simulated title to the property aforesaid * * ® sought or had tendered to him the assistance of one Samuel Haas, * * * a money lender, whereby the aforesaid judgment would be acquired from the said Stewart by the said Haas, and the said Haas subrogated to all the rights and privileges of the said Stewart thereunder; * * * that accordingly all further attempts of the said Stewart to execute on the judgment aforesaid [none having been alleged] were abandoned, and, on or about July 25, 1908, * * * the said Haas acquired the interest of the said Stewart in and to the said judgment. * * * ”
That Haas never placed the judgment or its transfer to him on the record, or attempted to execute it, but on September 28, 1912, took from T. Anderson Jackson a special mortgage on the property here in question for $3,541.44, “in evident satisfaction of the judgment aforesaid and accrued interest thereon and costs, notwithstanding that said Haas well knew that the said T. Anderson Jackson was never the owner of said property, and had judicial notice of the fact that said property belonged to the estate of James W. Jackson,' as recited in the judgment in the suit No. 18288 [being the suit of Stewart v. Jackson], * * * inconsequence of all of which the aforesaid alleged mortgage transaction * * • was and is an absolute nullity and void * * * in so far as your petitioners are concerned.”
That, though he knew that the title of T. Anderson Jackson was false, fraudulent, and simulated, and that he was without right to mortgage the property in question, and though, in taking the mortgage of September 28, 1912, he extinguished the Stewart judgment, by novation, Haas nevertheless foreclosed said mortgage, and on May 15, 1915, became the adjudicatee of the property, at Sheriff’s sale, but that the sale was a mere simulation, “following the original character of the transaction,” and that he acquired no title thereby; that thereafter “Haas ejected T. Anderson Jackson, who had gone into possession after the death of his father, and on October 11, 1916, pretendedly sold the property aforesaid to one George Allison Creswell ® * * for the alleged consideration of $6,000; of which $1,500 was supposed to have been paid in cash, and the balance of said purchase price being represented by 10 certain promissory notes, each of them for the sum of $450, and payable in 10 annual installments as per act * * ® duly recorded, * * * the said Creswell being now in illegal possession of said property, claiming the ownership thereof, but being without legal title thereto, for the reason that his vendor, the said Samuel Haas, having acquired no legal title thereto himself, could transfer none to the said Creswell, all as hereinabove set forth.
“Your petitioners aver that the said George Allison Creswell should be condemned to deliver up said property and surrender the same to your petitioners, and for the use and benefit of the estate of their deceased husband and father, James W. Jackson, with reservation to the said Creswell of such recourse as he may lawfully have against his vendor, to the end that petitioners may be accorded that which rightfully and lawfully belongs to them, subject to such legal rights, privileges, and charges as may properly exist against said property, if any.”
*919 Petitioners pray for the citation of Creswell alone; that in due course the petitioner first named be recognized as widow in community, and that the other petitioner, and “her said brother, T. Anderson Jackson,” be recognized as the sole surviving children and forced heirs of the said James W; Jackson, deceased, and as such the real owners of the property above described, and be judicially sent into possession of the same, in the proportion of one-half to your first named petitioner and one-fourth each to your second named petitioner and her aforesaid brother; that the pretended sale of November 7, 1905, from James W. Jackson to T. Anderson Jackson be' decreed false, fraudulent, and simulated, an absolute nullity, conferring no rights of ownership, the judgment obtained by Stewart against T. Anderson Jackson be decreed null, as to petitioners and in so far as it recognizes Jackson as the owner of the property aforesaid, or in the alternative to have been novated by the mortgage of September 28, 1912; that said mortgage and the sale of May 15, 1915, be decreed null, and particularly as against petitioners; that the defendant, Creswell, be decreed to be without legal title or interest in said property; and that the same be decreed to belong and be restored to the succession of James W. Jackson, deceased, subject to such rights, liens, charges, or privileges, if any, as may legally exist against it, there to be administered according to law.
In addition to the exception of no cause of action, the defendant further excepted on the ground that all the parties to the various transactions which are attacked should have been made parties defendant, but the suit was dismissed on the exception first mentioned.
Opinion.
According to plaintiff’s allegations, James W. Jackson, the husband of the one and father of the other, owned the property described in the petition, and was at liberty to sell or mortgage it, as he saw fit, and they had no rights to be asserted in or to it, so long as he lived. He borrowed money from a Mr. Stewart, and needed more, and, being informed that a further loan would be made, upon mortgage security he decided that, instead of himself mortgaging the property in question, he would make a transfer of it to his son, and use the notes to be given by the son as collateral security for the debt which he owed and that which he was about to contract. The wife and daughter, for whose support he may have needed the money so borrowed, now come into court with the allegations:
That the husband and father, who had been removed from this world by death more than 10 years before- this suit was instituted, “for the purpose of pretending to- obtain notes to pledge to the said Stewart, as collateral security for the money, already borrowed and to be borrowed by him from the said Stewart, conceived the idea of making a fraudulent, pretended, and simulated sale of the aforedeseribed property to his aforesaid said son. * * * The true purpose of said pretended sale was not the transfer of title, but to supposedly obtain mortgage notes which the vendor might pledge as collateral security for a debt contracted by the vendor with a third person.”
[1-3] The allegation of the purpose for which the transaction was entered into, i. e., to provide security for a debt past due and a debt to be contracted upon the faith of the security thus to be provided, utterly destroys the imputation of fraud and simulation, since the decedent was using his own property for his own need, to the prejudice of no one, and he violated no law and no canon of morality in vesting the legal title in his son, in order that the latter might issue notes secured by mortgage and vendor’s privilege, rather than that he himself should issue such notes without that privilege. * * * It being admitted that decedent “conceived the idea” of obtaining the needed security by that method, and that the se *921 curity was so obtained and used for the purpose for which it was obtained, it is clear that he would have no standing, as against a holder of the debt for which the security, was given, to deny that the intention of the authentic and recorded instrument executed by him for carrying into effect the idea so conceived was that which the language imports ; and the plaintiffs before the court are in no different position in that respect. For all the purposes for which the notes were issued, the instrument in question is to be regarded as that which it purports to be; i.e., an act of sale, evidencing a translation of title.
Again, the allegation that Stewart declined to loan more money without mortgage security, and that it was at his request that the security in question was given, considered in connection with the allegation that the decedent conceived the idea of executing and involving his son in the execution of a “false, fraudulent, pretended, and simulated act,” cannot reasonably be interpreted to mean that Stewart, while insisting upon security, made himself a party to the giving by decedent and the acceptance by him, as such security, of “spurious” notes, based upon a false, fraudulent, etc., sale and mortgage.
[4] And, still again, though plaintiffs allege that Creswell, the only person whom they have cited, is in possession, claiming title, through mesne conveyances, under the conveyance from. James "W. Jackson to T. Andérson Jackson though that conveyance is valid" on its face, translative of title, and has stood unchallenged on the public records for more than 14 years, and though it is necessary to plaintiffs’ success.that it should be shown (in this suit) to be simulated and absolutely void, they’have made no allegation which purports to connect Greswell with any defect therein, or even attributes to him any knowledge of such defect. It is to be presumed that he bought upon the faith of the record, as made by the decedent, who was the then sole owner of the property and who is the author under whom plaintiffs claim; and, as the record discloses no fraud or simulation in the deed by which decedent parted with it, Greswell is protected by the record against the charge of fraud and simulation, unless alleged and shown to have participated therein. McDuffie v. Walker, 125 La. 152, 51 South. 100; Dreyfous v. Cade, 138 La. 298, 70 South. 231.
The judgment appealed from is therefore affirmed.