336 So.2d 782 (1976)
J. B. OWEN et al.
v.
W. H. OWEN et al.
No. 57467.
Supreme Court of Louisiana.
June 21, 1976.
*784 Joseph A. Reeves, Jr., Emmons, Henry & Reeves, Jonesboro, for plaintiffs-respondents.
D. G. Brunson, Baker, Culpepper & Brunson, Jonesboro, for defendants-applicants.
CALOGERO, Justice.
This is a lawsuit by six of the seven children of I. M. and Henrietta Owen, including one J. B. Owen, against their brother (the seventh child W. H. Owen) and his vendees (Wayne S. Bush and Charles Wayne Bush) to have two transfers from their father, I. M. Owen, one to W. H. Owen and the other to W. H. Owen and J. B. Owen jointly, declared simulations, or, alternatively, nullified because they were donations in disguise and donations omnium bonorum, or, alternatively, to have such property collated in a partition.[1]
On March 22, 1957, I. M. Owen executed three separate deeds of sale covering tracts composed respectively of 40 acres, 40 acres, and 15 acres. He conveyed 40 acres to his son W. H. Owen for a stated consideration of $100, 40 acres to a second son J. B. Owen for a stated consideration of $720, and 15 acres to both W. H. Owen and J. B. Owen for a stated consideration of $300. The property descriptions are more fully given in the Court of Appeal opinion, Owen v. Owen, 325 So.2d 283 (La.App.2nd Cir. 1975), and are incorporated herein by reference. The properties are here referred to respectively as tracts one, two, and three. Ownership of tracts one and three are those at issue in this lawsuit.
In October 12, 1957, I. M. Owen died intestate, and on February 1, 1970 his widow, Henrietta Owen, died intestate. In 1972, following the deaths of Mr. and Mrs. Owen and, of course, subsequent to the execution of the three deeds mentioned above, one of the plaintiffs, J. B. Owen, conveyed all of his interest in tract three to his brother W. H. Owen for $1500. Thereafter, on January 29, 1973, W. H. Owen conveyed the acreage made up of tracts one and three in the following manner: twenty-seven and one-half acres comprising the western half thereof to defendant, Wayne S. Bush for $7,837.50, and twenty-seven and one-half acres comprising the eastern half thereof to defendant Charles Wayne Bush, Wayne S. Bush's son, for $7,837.50. Some nine months thereafter this suit was instituted by six of the Owen children against the seventh child, W. H. Owen, and his vendees Wayne and Charles Bush. Plaintiffs asked that the court set aside the transfers from I. M. Owen to his sons, and order the property returned to the decedent's estate or declare that each of the forced heirs own an undivided one-seventh interest in the property. Alternatively, plaintiffs asked that the property be collated under the provisions of Article 1227 et seq. of the Civil Code.
After trial on the merits the Second Judicial District Court rendered judgment in favor of plaintiffs declaring that the two deeds attacked were null and void. In his reasons for judgment the trial judge described the transfers as "simulations and donations in disguise." The trial court judgment further declared that each of the seven children owned an undivided one-seventh interest in the designated tracts at issue in this suit.
From this judgment defendants W. H. Owen, Wayne Bush, and Charles Bush appealed to the Second Circuit Court of Appeal alleging error in the trial court's judgment. The Second Circuit Court of Appeal affirmed the trial court's decision, *785 holding that the conveyances from I. M. Owen of the controverted tracts one and three were donations in disguise, donations omnium bonorum and consequently absolutely null. Owen v. Owen, supra.
We granted writs upon defendants' application. 326 So.2d 376 (La.1976). In this Court, defendants allege that the Court of Appeal erred in finding that the conveyances by I. M. Owen were donations in disguise and donations omnium bonorum, that they erred in concluding that a donation omnium bonorum is an absolute nullity, and that they erred in decreeing that the seven heirs of Mr. and Mrs. I. M. Owen were owners each of an undivided one-seventh interest in the subject property.
The following facts are borne out by the record and are not seriously contested. In March 1957, at the time I. M. Owen purported to sell the land in question to his sons, he sold tract number three, comprising 15 acres, for $300, although the property was worth $45 per acre, or $675.[2] On that same date he purported to sell tract one, comprising 40 acres, for a stated consideration of $100, although it was worth $45 per acre, or $1800.
In 1970 the fifty-five acres owned by W. H. Owen were valued at $10,725. He sold the land to the Bushes in 1973 for approximately $16,000. In 1975, that same property was worth $18,700. Although neither of the courts below reached this issue, it is clear that the Bushes purchased the disputed property for a fair price.
The acts of sale by which I. M. Owen conveyed the three tracts in 1957 identified the vendor as I. M. Owen and the vendees as W. H. Owen and J. B. Owen. The deeds, in authentic form, recite that the properties were sold to the respective vendees for the stated consideration "cash in hand paid, the receipt of which is hereby acknowledged." The deeds do not indicate that I. M. Owen was the father of W. H. and J. B., nor that these three properties constituted all of the property owned by Mr., or by Mr. and Mrs., Owen.
The only contested issue of fact in the case is whether the sons actually paid their father for the property. J. B. judicially confessed that he paid nothing for the property. W. H. claimed that he did pay for the property which was transferred to him, but could produce no evidence to support his assertion. The trial court found that nothing was paid by either brother for the land, a finding the Court of Appeal upheld. There is no error in this finding, and we agree with the courts below that the March 22, 1957 sales of tracts one and three to W. H. Owen and to J. B. Owen and W. H. Owen, respectively, were not sales but were disguised donations under Article 2444 of the Civil Code.[3]
It was established at the trial that before the Bushes purchased the property in question from W. H. Owen they were told by J. B. Owen that there was some question as to whether W. H. Owen could transfer a "clear deed," but they were given no reason for J. B.'s assertion. Wayne Bush also learned from W. H. Owen that he had bought the property from his father. However, there is no evidence that the Bushes ever had any knowledge of Mr. and Mrs. I. M. Owen's financial condition (at any time) nor any knowledge of the value of the property in March of 1957, some fifteen years before their purchase of the property.
The plaintiffs established at trial that at the time of the transfers in question Mr. and Mrs. Owen were living on social security *786 and welfare payments, and that they owned no immovable property other than the three tracts transferred; but there was no evidence as to the amount of income they were receiving, nor was there any evidence as to what their living expenses were. It was established that I. M. Owen had $600 when he died in late 1957, a sum W. H. Owen kept in an account "for his mother."[4]
The plaintiffs contend, and the courts below found, that when I. M. Owen sold these two tracts he had divested himself of all of his property without reserving to himself enough for subsistence. Article 1497 prohibits such a donation in the following language:
"The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole."
In order to sustain an attack on a gift as a donation omnium bonorum, the heirs must prove conclusively that the donation divested the donor of all of his property. Whitman v. Whitman, 206 La. 1, 18 So.2d 633 (1944); Potts v. Potts, 142 La. 906, 77 So. 786 (1918); Hearsey v. Craig, 126 La. 824, 53 So. 17 (1910); Hinton v. May, 241 So.2d 583 (La.App.2nd Cir. 1970). In light of the stringent requirements set forth in the aforementioned cases, we are not as certain as were the lower courts that the requirements of Article 1497 were met so as to brand I. M. Owen's disguised donations as donations omnium bonorum. We nonetheless accept the finding of the lower courts, for, even assuming the donations were omnium bonorum, the decision of the Court of Appeal in our view must be reversed for the reasons we relate thereinafter.
The plaintiffs allege first that the transfers from parent to sons were simulations. In our law, a simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations, and disguised transfers.[5] In a pure simulation, sometimes called a non-transfer, the parties only pretend to transfer the property from one to the other, but in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed, which was that no transfer had in fact taken place. In a contest between a vendor and vendee in this situation the true intent of the parties is effectuated and the courts hold that no transfer took place because the simulated sale is an absolute nullity. Successions of Webre, 247 La. 461, 172 So.2d 285 (1965); Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932); Milano v. Milano, 243 So.2d 876 (La.App.1st Cir. 1971). The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but which is intended by the parties to be a gift rather than a sale. When this sort of simulation is attacked successfully, as it has been here under Article 2444, the true intent of the parties is likewise effectuated by the law. A valid transfer has taken place, but its form is a donation rather than a sale and the Code articles on donations apply to the transfer. Stevens v. Stevens, 227 La. 761, 80 So.2d 399 (1955); Carter v. Bolden, 13 La.App. 48, 127 So. 111 (La.App. 2nd Cir. 1930); 35 La.L.Rev. 192 (1974); 25 La.L.Rev. 313 (1965).
However, when the property is no longer held by the original vendee but has passed into the hands of an innocent third party who has purchased for value and in reliance on the public records, the result is *787 much different. In the case of Chachere v. Superior Oil Co., 192 La. 193, 187 So. 321 (1939), this Court upheld the rights of third party purchasers to retain the land in question even though the transfer to their vendor had been a disguised donation. The Court held that because the transfer from the original vendor (the parent of the plaintiff-forced heirs) to the original vendee (who in turn sold to the defendant-third party purchasers) was on its face a valid sale, the plaintiffs were not allowed, after the property had passed into the hands of third parties, to introduce evidence that the transfer was not a sale. The Court stated that:
"It is the well settled jurisprudence of this state that third persons dealing with immovable property have a right to depend upon the faith of the recorded title thereof and are not bound by any secret equities that may exist between their own vendor and prior owners of the land." 187 So. 321.
In the case of Thompson v. Thompson, 211 La. 468, 30 So.2d 321 (1947), this Court reaffirmed Chachere and held that, when a third person acquires title to land prior to the assertion by forced heirs of their rights to have the disguised donation annulled, the third party who had purchased for value on the strength of the public records will defeat the claim of the forced heir. The Court stated that:
"[W]hereas our system of law has protected the forced heirs against acts designed to deprive him of his legitimate portion, the rights granted to such forced heir cannot be extended so as to defeat the subsequently acquired rights of third persons who have bought property on the faith of the public records and under the belief that their vendor acquired a valid title by purchase. In fine, considerations of public policy, respecting a stability of titles, makes it necessary that innocent third parties prevail over the forced heir even though it results in the denial of the heir's right which our law has so carefully guarded." 30 So.2d at 329.
Likewise, when immovable property which has been the subject of a "pure" simulated sale is later sold to third persons who rely on the public records, in a case where the records show that the transfer was a proper sale, and where the records reveal no counterletter, the rights of the third party cannot be affected by subsequent proof that the original transfer was a pure simulation. Beard v. Nunn, 172 La. 155, 133 So. 429 (1931); Jackson v. Creswell, 147 La. 914, 86 So. 329 (1920); Vital v. Andrus, 121 La. 221, 46 So. 217 (1908); Gordon v. Culbertson, 296 So.2d 401 (La.App.2nd Cir. 1974); Redmann, The Louisiana Law of Recordation: Some Principles and Some Problems, 39 Tul.L. Rev. 491 (1965); 35 La.L.Rev. 192 (1974); 17 Tul.L.Rev. 457 (1943). It is clear then from the jurisprudence that in the situation where the original transfer was a pure simulation (and not therefore effective to pass title) and in the situation where the original transfer was a disguised donation (and did therefore effectively pass title to the transferee) that the rights of a third party are protected if he purchased on the basis of a public record evidencing an apparently valid sale. Since the third party purchasers here, the Bushes, did purchase for value and in reliance on public records which evidenced a valid sale, they are protected against the claims of the plaintiff forced heirs notwithstanding the fact that the transfer was actually a donation in disguise.
However, plaintiffs urge alternatively that the transfer was a disguised donation which purported to give away all that the donor (I. M. Owen) had, without retaining enough for his subsistence, in contravention of Article 1497, and therefore "null for the whole." Plaintiff argues that if the vendee received only a null title, one that was ineffective to transfer title, he could not validly pass title on to the Bushes.
*788 We find, however, that even if the title which passed to the sons could be declared absolutely null while the property remained in their hands,[6] when the property passed into the hands of an innocent third party purchasing in reliance on the public records, the claimants could no longer recover the property. In the case of Rocques v. Freeman, 125 La. 60, 51 So. 68 (1909), a widow transferred to her children through a partition her undivided interest in her community property. The children subsequently sold the property to third parties. The mother later attempted to nullify her transfer as a donation in disguise and as a donation omnium bonorum, but this Court affirmed the dismissal of her petition. The Court found that her transfer was null because it was a donation in disguise and a donation omnium bonorum, but held that the nullity could be asserted only against the donees, not against innocent third parties who had dealt with the property on the faith of the public records.
The Court stated:
"The act which is sought to be annulled in this case as a donation does not appear on its face to possess that character. On its face, it is a partition between Charles F. Metoyer and his sister [plaintiffs' children]. It was no more calculated to put innocent third parties on their guard against defects in the title than would have been a donation in the form of a sham sale. And we do not imagine any one would say that a donation in the form of a sham sale could be annulled to the detriment of innocent third persons who had dealt with the property in the faith of the public records." 51 So. at 70. (emphasis added)
We hold, therefore, that where there is nothing of record to indicate that the transfer to the original vendee could have been annulled as a donation omnium bonorum and when an innocent party has purchased the land for valuable consideration relying upon the public records, the third party takes the property free of these unrecorded and secret equities.
Plaintiffs, however, claim that the Bushes were not innocent third party purchasers because they had certain actual knowledge about the original transfers, namely, that the transfers were from father to children and that one of the brothers felt there was some doubt as to whether they (the Bushes) could get a "clear deed."
It is uncontroverted that the Bushes were arms length purchasers who were buying the property for value, and that they were not participants or co-participants in any attempt at fraud. The legal issue here is whether the actual knowledge which they had of the previous transfer placed them in such a position that they could not rely on the public records. We hold that it did not.
A third party purchaser can rely on the public records so long as he does not participate in fraud. Jackson v. Creswell, 147 La. 914, 86 So. 329 (1920); Kinchen v. Kinchen, 244 So.2d 316 (La.App.1st Cir. 1970), writ not considered, 257 La. 854, 244 So.2d 608; Dugas v. Talley, 109 So.2d 300 (La.App.1st Cir. 1959). Even if he has some actual nonrecord knowledge of a preceding transfer which might have made him suspicious of a deed's validity, he may still rely on the public records if they reveal an apparently valid sale. In the case of Prather v. Porter, 176 La. 324, 145 So. 675 (1933), this Court upheld the dismissal of a suit by the forced heir of the original vendor on defendants' exception of no cause of action (defendants were third party purchasers) where the plaintiff contended that defendants were chargeable with knowledge that the transfer was a donation, because the defendants knew the following things: the original vendees were *789 stated in the recorded instrument to be the daughter-in-law and grandson of the vendor; the consideration was stated to be "whatever amount"; and the transfer actually divested the transferor of all of his property. The Court held that these allegations were insufficient to charge the defendants with bad faith because, as it stated:
"the conveyance records are the only things to which one dealing with real estate or real rights needs to look. Notice or knowledge dehors the public records on the part of a third person is not equivalent to registry." 145 So. at 677.
As to plaintiffs' contentions as to the family relationship and the price, the Court stated:
"There is no law prohibiting the owner of real property from selling the property to his daughter-in-law and grandson. The price as finally expressed in an act of sale represents the stated consideration for the sale. And a vendee who has paid an adequate price cannot be dispossessed of his property because a prior vendor has chosen to part with his title for an inadequate consideration." Id.

The actual knowledge which the Bushes had of the transfer to their vendor was far less than the Court in Prather assumed that the defendants had there. Of record, defendants Bush knew only that the vendor and vendee had a common surname, and that fifteen acres had been sold ostensibly for $300 and forty acres ostensibly for $100. Although the price of the forty-acre tract might have seemed unusually low (had the Bushes known the land values some fifteen years before), the stated consideration of the smaller tract was later established as a full 44% of its true fair market value,[7] and, as this Court stated in Prather, "a vendee who has paid an adequate price cannot be dispossessed of his property because a prior vendor has chosen to part with his title for an inadequate consideration." Beyond the record, the Bushes were aware that the original vendor-vendees were father and sons, and that one of the sons felt they could not get a clear deed. However, no suggestion has been made that the Bushes had any reason to believe that the sons had not paid for the property or that the sales in March of 1957 comprised all that the father had for his subsistence. It can therefore hardly be said that the Bushes were put on notice, either by the record or in fact, that the sales in question were donations, much less donations omnium bonorum.
Therefore we conclude that a third party, who is not participating in fraud, and who plans to purchase for value property which according to the public records was properly sold to his prospective vendor, may rely on those records even though he has some actual knowledge on which he could speculate that a timely prosecuted legal attack upon his vendor's title might be successful.
Plaintiffs' final alternative argument is that the advantage bestowed upon W. H. Owen by his father when W. H. was donated the property in dispute is subject to collation. C.C. art. 1248. Collation, however, is not properly demandable in this suit which is primarily an action to set aside a sale by a parent to one of his children on the ground that it is a donation in disguise and a donation omnium bonorum. Collation is made only to the succession of the donor, C.C. art. 1242, and it is clear that a demand for collation must be brought incident to a succession proceeding, and not made part of a suit to nullify a sale. Taylor v. Brown, 223 La. 641, 66 So.2d 578 (1953); LaMotte v. Martin, 52 La.Ann. 864, 27 So. 291 (1899); Jackson v. Jackson, 175 So.2d 360 (La. App.2nd Cir. 1965) and cases cited therein. *790 If the succession proceedings have been opened for I. M. Owen's estate, it is in those proceedings which this claim must be brought. If the succession has not been opened, then the claim for collation is premature. Jackson v. Jackson, supra.
Anticipating that this Court might find merit in defendant's arguments, plaintiffs have filed with us a motion for remand and for a new trial, so that they may have the opportunity to supplement the record in this case. They allege that on the same day the Court of Appeal denied defendant's application for rehearing the Bushes reconveyed the property in dispute to their vendor, W. H. Owen.[8] Plaintiffs contend that these conveyances moot the public record defense now before the Court and, in effect, remove the Bushes from the litigation.
We do not agree with plaintiffs' conclusion and find it unnecessary to remand the case. Assuming that the plaintiffs would establish on remand that the appended deeds are authentic (and we have no reason to believe they could not), and that the Bushes have sold the property to W. H. Owen following denial of rehearing application in the Court of Appeal, we do not feel that such a sale affects the litigation in its present posture.
Plaintiffs do not suggest that the reconveyances evidence fraud or collusion on the part of the Bushes. The deeds tend to establish that the initial transfers were armslength transactions rather than the reverse, because the monthly payments on the credit portion of the original acquisition price, seemingly at least, were made by the purchasers between acquisition and reconveyance.[9] Furthermore, motivation for the reconveyance, we can properly surmise, is found in the (interim) adverse decision (to defendants) in the Court of Appeal and in W. H. Owen's warranty obligation arising from the original transfers. More important than these considerations, however, is the fact that plaintiffs do not allege the reconveyances are evidence of fraud or some sort of fraudulent complicity on the part of the Bushes.
This phase of the litigants' controversy should and will be concluded on the present record. Conveyance of the property following the Court of Appeal's denied of rehearing, not reprobated by law or otherwise inhibited, and if no evidentiary or other value insofar as is concerned resolution of the joined issues in this litigation, is legally of no moment. The matter of the defendant Bushes acquisition on the strength of the public record is not moot. This motion is denied.[10]
For the foregoing reasons, the judgment of the Court of Appeal is set aside and the plaintiffs' suit is dismissed at their cost.
NOTES
[1] Petitioners do not attack the transfers as being in derogation of Henrietta Owen's community rights [see C.C. art. 2404], presumably because she signed the deeds along with her husband.
[2] The property values quoted here were established by expert evidence at the trial and were uncontroverted.
[3] Article 2444 provides in full that:

"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
[4] W. H. Owen also testified that he put aside $1400 for his mother, money he received from a mineral lease, presumably sometime after his father's death in 1957.
[5] For discussions of the legal concept of simulations, see Lemann, Some Aspects of Simulations in France and Louisiana, 29 Tul.L.Rev. 22 (1954) and 35 La.L.Rev. 192 (1974).
[6] For discussions of the area of donations omnium bonorum, see 34 Tul.L.Rev. 228 (1974); 23 La.L.Rev. 433 (1963); and 6 La.L.Rev. 98 (1944).
[7] It is not a matter of record in this case as to which twenty-seven and one-half acre tract encompasses the fifteen acres.
[8] Plaintiffs attach to their motion copies of what purport to be two deeds, one from Wayne S. Bush and one from Charles Wayne Bush, to W. H. Owen for the sale of the two twenty-seven and one-half acre tracts Owen previously sold to them. The deeds evidence that Owen re-purchased the property for the same price, the consideration being cancellation of the outstanding balance on the note which was originally given by the Bushes as a portion of the purchase price, and a sum in cash which amounted to the original cash portion supplemented by the monthly payments made on the credit portion between the acquisition and reconveyance.
[9] Id.
[10] We are not called upon in this litigation to resolve all potential legal controversies between plaintiffs and their brother W. H. Owen. Any such unconcluded additional claims or issues, when and if they arise, will appropriately be resolved at that time.