STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-811

RAYMOND C. DAVIS

VERSUS

ROBERT ST. ROMAIN

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2010-2856
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.

Amy, J., concurs in the result.

AFFIRMED.

Todd S. Clemons
Todd Clemons & Associates
A Professional Law Corporation
1740 Ryan Street
Lake Charles, LA 70601
Telephone:  (337) 477-0000
COUNSEL FOR:
    Third Party Appellee - Palvest, Inc.

Jamie C. Gary
Dwight Law Firm, LLC
1400 Ryan Street
Lake Charles, LA 70601
Telephone:  (337) 439-3138
COUNSEL FOR:
    Defendant/Appellee - Robert St. Romain

**Daniel M. Landry, III**
**Christian B. Landry**
**The Landry Law Firm**
**P. O. Box 3784**
**Lafayette, LA 70502**
**Telephone:  (337) 237-7135**
**COUNSEL FOR:**
     **Appellant - Difang, LLC**

**THIBODEAUX, Chief Judge.**

Raymond Davis and Robert St. Romain entered into a purchase agreement for Mr. St. Romain to sell land he inherited from his father. The agreement mandated the act of sale date could be extended thirty days if curative work was needed. Mr. Davis sought to correct title defects and triggered the extension. However, he did not perform curative work, and Mr. St. Romain refused to execute closing documents. Thus, the purchase agreement expired without the property being conveyed. Mr. Davis filed suit alleging breach of contract. The trial court issued a judgment in favor of Mr. St. Romain and determined a third-party purchaser, Palvest, Inc., was the rightful owner. It reasoned Mr. Davis[1] failed to perform necessary curative work, even after he requested an extension to do so. For the reasons that follow, we affirm the trial court's judgment.

## I.

## ISSUE

We must decide whether the trial court erred in finding Mr. Davis, the proposed purchaser, breached the terms of the purchase agreement by not performing curative work after extending the act of sale date and finding Palvest, Inc. was entitled to the subject property.

---

[1]Difang, LLC is owned by Mr. Davis and his wife. He transferred his interest in the purchase agreement to Difang. After Mr. Davis filed suit, Mr. St. Romain filed an exception of no right of action because the purchase agreement had been assigned to Difang. The petition was then amended to add Difang and Mr. Davis was dismissed.

II.

## FACTS AND PROCEDURAL HISTORY

This is a dispute over the purchase of immovable property. The buyer, Mr. Davis, and the seller, Mr. St. Romain,[2] entered into a purchase agreement for 330 acres. Robert St. Romain and his siblings inherited the property from their father after his death. The Judgment of Possession omitted a 28.426 acre tract their father owned. The parties initiated paperwork to amend the judgment to include the additional tract. However, the amending paperwork was never filed; thus, the heirs were never put into possession of the tract.

The purchase agreement mandated the closing to take place on April 26, 2010, at 4:00 p.m. or sooner if mutually agreed. The agreement allowed the closing date to be extended thirty (30) days if curative work was required.[3] On the act of sale date, Mr. Davis's attorney sent correspondence to Mr. St. Romain's attorney informing him curative work was required because the Judgment of Possession needed to be amended to include the 28.426 acre tract. The letter also noted his concern that Mr. St. Romain made efforts to sell his interest to a third party, Palvest, Inc. The purchase agreement between Palvest and Mr. St. Romain was signed on December 30, 2009, and January 4, 2010, respectively. Mr. St. Romain stated he signed the agreement with Palvest because of his concern Mr. Davis would not follow through with the purchase agreement.

---

[2]Additional sellers were Aaron St. Romain and Danielle St. Romain, who also are heirs to Don St. Romain, Sr.

[3]The contract states: "In the event curative work in connection with the title is required, the parties agree to and do extend the date of passing the Act of Sale to a date not more than Thirty days from the stated Act of Sale. *Title shall be merchantable*. If title is not merchantable then, among other rights, Purchaser shall have the right to declare this contract null and void, reserving unto Purchaser the right to demand the return of the deposit and to recover from Seller actual cost % incurred in processing the sale. Seller to pay for all curative costs." (Emphasis added).

After he used the extension, Mr. Davis created Difang, LLC. He and his wife were the sole members. Mr. Davis assigned and transferred his rights in the purchase agreement to Difang. He stated he founded Difang for estate planning purposes. A year before Difang was founded, a judgment against Mr. Davis in an unrelated matter from an Alabama court for $2,538,905 was made executory in Calcasieu Parish.

A day before the closing deadline, Mr. Davis appeared in Houston, where Mr. St. Romain resided and worked, without notice. He testified he traveled there with two deeds—one transferring the property to him personally, the other transferring the property to Difang. The revised deeds included the 28.426 acre tract, without warranty of title.

Mr. Davis feared Mr. St. Romain would not meet him willingly, so he devised a plan to lure Mr. St. Romain to a designated location. He recruited his friend, Jeff Buchannon, who called Mr. St. Romain to inform him he was the winner of prize money. Mr. Buchannon told him that he wanted to deliver the check to him at a parking lot in Houston. Mr. Davis chose the parking lot because it was near a notary office. Mr. Buchannon did not mention either Mr. Davis's involvement or that the prize money was a fraudulent story.

The two met and after they exchanged handshakes, Mr. Davis stepped out of his car with a cashier's check and the two deeds. Mr. St. Romain refused to sign the documentation when confronted because his attorney had not reviewed it. After the meeting in Houston, Mr. Davis's attorney forwarded to Mr. St. Romain's attorney the proposed deed and an unsigned Act of Assignment between Mr. Davis and Difang. Mr. St. Romain never signed the closing documents. He later conveyed the property to Palvest, Inc., a third-party purchaser.

3

Thereafter, Mr. Davis filed suit against Mr. St. Romain alleging breach of contract. Difang was added as a plaintiff and Palvest was added as a third-party defendant. Mr. Davis was dismissed from the action because the purchase agreement had been assigned to Difang. Mr. St. Romain filed a motion for summary judgment, which was granted by the trial court, but later reversed on appeal. *See Davis v. St. Romain*, 12-1442 (La.App. 3 Cir. 6/5/13) (unpublished opinion).

After a bench trial, the trial court ruled in favor of Mr. St. Romain. The court reasoned: (1) Mr. Davis did not perform curative work even after he requested an extension to do so; (2) the extension of the closing date was a "subterfuge to allow Mr. Davis to get his affairs in order so that the property wouldn't be attacked [by the Alabama judgment];" (3) it was necessary to perform curative work; (4) the proposed deed presented on the eve of the closing deadline was "sloppy;" and (5) Palvest was an innocent third-party purchaser, and the sale to it was valid. Difang now appeals the trial court's judgment.

III.

**STANDARD OF REVIEW**

The parties dispute the standard of review we should apply. Difang contends that because this matter involves interpretation of a contract, the de novo standard of review should be applied. Conversely, Mr. St. Romain posits the manifestly erroneous or clearly wrong standard should be applied because the trial court's factual findings are disputed.

Generally, a contract is examined on its four corners, without the need for extrinsic evidence, as a matter of law. However, "[w]here factual findings are

pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown." *Evangeline Parish Sch. [Bd.] v. Energy Contr.*, 617 So.2d 1259, 1265 (La.App. 3 Cir.), *writ denied*, 624 So.2d 1228 (La.1993) (quoting *Borden, Inc. v. Gulf States Utilities Co.*, 543 So.2d 924, 928 (La.App. 1 Cir.), *writ denied*, 545 So.2d 1041 (La.1989)). Conversely, "[w]hen a trial court's interpretation of a contract is not based upon any factual findings, but, rather, is based upon a review of the contract's language, the manifest error standard of review does not apply." *Derouen v. Nelson*, 09-467, p. 3 (La.App. 3 Cir. 3/10/10), 32 So.3d 1079, 1082 (citing *Conoco, Inc. v. Tenneco, Inc. By and Through Tennessee Gas Pipeline Co.*, 524 So.2d 1305 (La.App. 3 Cir. 1988), *writ denied*, 525 So.2d 1048 (La.1988)).

Here, the trial court heard witnesses, considered evidence and made factual findings, in addition to examining the four corners of the contract. The trial court also made a number of factual findings. For example, the trial court examined Mr. St. Romain's demeanor and determined he was a "mild-manner kind of guy" who was not trying to evade the sale to Difang but wanted his attorney to review the documents instead of signing them when confronted in Houston. Further, the trial court determined Mr. Davis used the thirty-day extension as a maneuver to "get his affairs" in order to prevent the Alabama judgment from attaching to the property. The trial court also determined it was necessary to perform curative work once the thirty-day extension was triggered.

Because the trial court made factual findings, we will apply the manifest error standard of review, which does not allow us to reweigh the evidence or substitute our own factual findings. When there are two permissible views of

evidence, the fact finder's determination cannot be overturned unless manifestly erroneous or plainly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

IV.

**LAW AND DISCUSSION**

Difang argues it is immaterial whether curative work was performed. It contends the trial court erred in its interpretation because the purchase agreement does not mention specifically the necessity to perform curative work once the extension was triggered. Further, it claims creating Difang was not based on nefarious motives, but was done for Mr. Davis's estate planning. Difang also claims Mr. St. Romain did not make an effort to have the closing documents reviewed by his attorney after the two met in Houston. Difang contends Palvest is not the rightful owner because the purchase agreement between Mr. St. Romain and Palvest was executed nearly five months prior to the original closing date between Mr. Davis and Mr. St. Romain.

In opposition, Mr. St. Romain contends curative work was necessary to fulfill the terms of the purchase agreement.[4] Since Mr. Davis did not complete the curative work even after requesting an extension to do so, the agreement was terminated. Instead, Mr. St. Romain argues Mr. Davis extended the closing to avoid a prior judgment from an Alabama court from attaching to the property. Mr. St. Romain directs the court to a timeline of events he calls "not coincidental."[5]

---

[4]Palvest submitted a brief in which it adopted Mr. St. Romain's arguments.

[5]This timeline includes: (1) On April 17, 2009, the plaintiff in the Alabama matter recorded the judgment in Calcasieu Parish making it executory against Mr. Davis in the Fourteenth Judicial District Court; (2) On November 2, 2009, the purchase agreement was signed with an April 26, 2010, closing date, (3) On April 26, 2010, Mr. Davis delayed closing using the thirty day curative measure extension, which set May 26, 2010, as the new closing date, (4) Mr.

6

Further, Mr. St. Romain posits the closing documentation presented to him was not reflective of the purchase agreement. The deed, he argues, did not contain: (1) a reservation of mineral rights; (2) a signature line for him; or (3) a reference to any person who had authority to execute the proposed deed on behalf of Difang. He also notes documents assigning interest from Mr. Davis to Difang were sent to him, but were unsigned. Mr. St. Romain avers Palvest is the rightful owner because his interest was not conveyed to Palvest until two years after the Davis-St. Romain agreement expired.

A contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982). Louisiana Civil Code Article 2045 establishes the "[i]nterpretation of a contract is the determination of the common intent of the parties." "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

However, a contract is ambiguous when "either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed." *Campbell v. Melton*, 01-2578, p. 6 (La. 5/14/02), 817 So.2d 69, 75. If a contract is ambiguous, extrinsic evidence is admissible to determine the true intent of the parties. *LFI Fort Pierce, Inc. v. Acme Steel Bldg., Inc.*, 16-71 (La.App. 3 Cir. 8/17/16), 200 So.3d 939.

Davis and his wife created Difang, LLC, on May 21, 2010; (5) On May 25, 2010, Mr. Davis surprised Mr. St. Romain in Houston; and (6) On May 28, 2010, Mr. Davis filed suit.

"A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053. Further, "[i]n case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La.Civ.Code art. 2056.

Here, we note Difang does not argue it completed the curative work. Instead, Difang contends the sale could have proceeded without curative work being performed. However, it ignores a key provision in the purchase agreement. The agreement states "[t]itle shall be merchantable." That is, the property shall not be conveyed without a merchantable title. A merchantable title is one that "can be readily sold or mortgaged in the ordinary course of business by reasonable person familiar with the facts and questions involved." *Vallery v. Belgard*, 379 So.2d 1201 (La.App. 3 Cir. 1980) (citing *Young v. Stevens*, 252 La. 69, 209 So.2d 25 (1967)). Typically, in Louisiana, a purchase agreement provides specifically that the seller is responsible for delivering merchantable title to the purchaser. *See* 1 La. Prac. Real Est. § 9:60 (2d ed.). However, the agreement here is silent on which party is responsible for ensuring merchantable title. Because Difang drafted the purchase agreement, any ambiguities are resolved against it. Moreover, Mr. Davis requested an extension to resolve the title issue and took it upon himself to draft the proposed deed. Thus, Mr. Davis was responsible for ensuring title was merchantable.

The deed presented by Mr. Davis to Mr. St. Romain in Houston did not perfect merchantable title. Mr. Davis knew Mr. St. Romain had not been placed in possession of the 28.426 acre tract. He was active in attempting to

8

convince the heirs to amend the Judgment of Possession before he drafted the purchase agreement. However, an amended Judgment of Possession was never filed. Even still, Mr. Davis included the additional tract in the proposed deed. Such a deed does not reflect merchantable title because it includes a tract not yet in the seller's name. Further, Mr. St. Romain did not receive a signed Act of Assignment between Mr. Davis and Difang in advance of the closing date. Without such a document, Mr. St. Romain could not have conveyed his interest to a party that was not subject to the purchase agreement. Accordingly, we find the deed presented to Mr. Romain referenced immovable property for which title was not merchantable.

Additionally, the trial court did not err in finding it was necessary to perform curative work. As noted above, a contract must be interpreted in a common-sense manner. If it was unnecessary to cure defects in the title, Mr. Davis could have closed on the original act of sale date. Mr. Davis requested an extension with the express intent to perform curative work. Mr. Davis did not attempt to perform, and certainly never completed, necessary curative work.

The evidence supports the trial court's finding that Mr. Davis used the extension as a ploy. Instead of performing curative work, Mr. Davis used the extension to create Difang and assign his interest in the purchase agreement to it. He did so to prevent the Alabama judgment from attaching to the subject property. Consequently, Mr. St. Romain never was presented with proper documentation to legally convey the property before the purchase agreement expired. Accordingly, the trial court did not commit manifest error. We affirm its judgment on this issue.

Further, Palvest is the rightful owner. When fraud or bad faith are not issues, a third party purchaser is considered an innocent third party purchaser

entitled to protections afforded by the public records doctrine. *Owen v. Owen*, 336 So.2d 782 (La.1976). [6] This doctrine mandates an innocent third party need only look to the public records to determine adverse claims. *Three Rivers Farm Supply, Inc. v. Webber*, 617 So.2d 1220 (La.App. 3 Cir. 1993).

First, neither fraud nor bad faith is an issue because there is no evidence Palvest stunted Mr. Davis's ability to provide proper closing documents to Mr. St. Romain. Thus, Palvest is an innocent third party purchaser. In fact, Mr. St. Romain could not sell to Palvest until his purchase agreement with Mr. Davis expired. *See, e.g., Versai Mgmt., Inc. v. Monticello Forest Prods. Corp.*, 479 So.2d. 477, 481 (La.App. 1 Cir. 1985) (holding that an option holder's acceptance of a recorded option to purchase immovable property within the stipulated time cannot be defeated by a subsequent sale of the property, which occurred after the option was recorded, to a third party). If Mr. Davis had closed on the original act of sale date, or if he performed the necessary curative work, he would be entitled to the property. Instead, he failed to perform curative work even after he requested an extension to do so. Consequently, he breached the purchase agreement and forfeited his right to claim an interest in the property.

Second, the Davis-St. Romain purchase agreement was a contract to sell, but only if the terms were met. The agreement did not convey the property to Mr. Davis. The record establishes that after the purchase agreement between Mr. St. Romain and Mr. Davis was executed, Mr. St. Romain executed a second purchase agreement with Palvest. The second purchase agreement was done as

---

[6]"An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located." La.Civ.Code art. 1839; *see also* La.Civ.Code arts. 517, 2442, 3338.

security if the deal with Mr. Davis fell through.[7] Mr. St. Romain rightfully conveyed his interest to Palvest nearly two years after the Davis-St. Romain purchase agreement expired. Accordingly, we affirm the trial court's judgment on this issue.

V.

## <u>CONCLUSION</u>

For the reasons stated, the trial court's judgment is affirmed. Costs of this appeal are assessed to Difang, LLC.

**AFFIRMED**.

---

[7]The purchase agreement with Palvest was executed on December 30, 2009, and January 4, 2010, which was more than a month after the Davis-St. Romain agreement was signed.