339 So.2d 1333 (1976)
Henry BELL, Sr., et al., Plaintiff-Appellant,
v.
Mitchell J. BELL et al., Defendants-Appellants.
No. 5692.
Court of Appeal of Louisiana, Third Circuit.
November 18, 1976.
Rehearing Denied December 15, 1976.
*1334 Collings & Collings, by Robert L. Collings, Lake Charles, for plaintiff-appellant.
Jack Rogers, Lake Charles, for defendant-appellee.
Before DOMENGEAUX, WATSON and HUMPHRIES, JJ.
HUMPHRIES, Judge.
Plaintiffs in this cause, Mr. Henry Bell, Sr. and Edward Bell, seek judgment declaring an act of sale to Mitchell Bell (plaintiffs' brother) by Azenor Bell (plaintiffs' father) to be a simulation or a donation in disguise. Judgment was rendered by the trial court rejecting plaintiffs' demands.
The essential facts reveal that at the time of the conveyance in question Azenor Bell was ninety-two (92) years old and living in a nursing home in Lake Charles. There is neither evidence nor is it asserted that Mr. Bell was in any way not competent to execute the transfer. Prior to moving into the nursing home Mr. Bell lived in his own home in Kinder, Louisiana.
From the record, it is exceedingly difficult to reconstruct the exact chronological sequence of events. However, it does seem clear that Azenor Bell was married to and living with Mathilda Marcantel from about 1965 to 1971. During the marriage the couple resided in Kinder, Louisiana on the property which is the subject of the present dispute. Because of the advanced age of the couple, assistance was required by them to care for their daily needs. Mitchell Bell and Sovena (his wife) lived in Kinder and rendered the assistance required by Mitchell's father and Mathilda Marcantel. Their tasks included: providing transportation for doctor's visits; purchasing groceries; cleaning the house; caring for the couple when they were sick; cooking the meals; maintaining the yard around the house, etc. These facts were testified to by Mitchell and Sovena Bell, and corroborated in the testimony of Ida Bell Lindquist (Azenor Bell's sister) and Lovelin Bell (Azenor Bell's grandson).
Shortly after the death of Mathilda Marcantel in early 1971 Henry Bell, another son, came to stay with Azenor Bell. The purpose of the stay was to help the older man around the house. This stay lasted for about four to five months. It was testified to by Mitchell and Lovelin that Henry was recompensed for his assistance at a wage of $5.00 per day. Further, Lovelin Bell stated that he paid Henry $800 for these services from a fund of money which he was entrusted with by Azenor Bell. This $800 fund coincides with the money received from a sale of some of Azenor Bell's furniture. It was stated by Henry Bell in his testimony that after his departure in 1971 he never visited or saw his father again.
In the latter part of 1971 or early 1972 after Henry's departure, Azenor Bell entered a nursing home in Lake Charles. Subsequently Mr. Bell moved to a second *1335 nursing home in Lake Charles where he lived until his death December 28, 1973. During the period that Azenor Bell lived in the nursing homes the sums of money that Mr. Bell had or received by way of social security and inheritance were managed and distributed by Mitchell Bell. This fact is evidenced by the receipts placed in evidence indicating Mitchell paid for Azenor Bell's medicine and the additional cost of Mr. Bell's private room in the nursing home.
Further, Mitchell and Sovena Bell testified that they continued to assist Azenor Bell while he was in the nursing home by procuring and delivering his medicine; preparing special foods that he liked; bathing and shaving him; providing transportation for ventures outside of the nursing home for his recreation and enjoyment. These facts were corroborated by Lovelin Bell in his testimony. It is noted that each of these visits or errands necessitated a trip from Kinder to Lake Charles by Mitchell and Sovena Bell. It was the testimony of Mitchell Bell and Sovena Bell that these trips were taken every other day while Azenor Bell was in the nursing homes.
On February 26, 1973 the conveyance complained of in the instant suit was executed by Azenor Bell to Mitchell and Sovena Bell. As recited in the deed the transfer included the home Azenor Bell had in Kinder, Louisiana for the stated consideration of $5,000 cash. It was readily admitted by defendants that the $5,000 was never paid. On the same day a counter letter was drawn up between the parties to the transfer stating that the true consideration for the conveyance was not $5,000 but was the proximate value of services rendered and to be rendered Azenor Bell by Mitchell and Sovena Bell. Further, the grantor, Azenor Bell, retained the usufruct of the property until death.
The act of sale was recorded in October 1973, but the counter letter was never recorded.
The trial court gave effect to the counter letter to the extent of the retention of the usufruct by Azenor Bell. LSA-C.C. art. 2239. This retention of the usufruct by the vendor raised the rebuttable presumption that the sale was a simulation according to LSA-C.C. art. 2480. It was the conclusion of the trial court that defendant Mitchell Bell had overcome this presumption by establishing that the sale was contracted in good faith with consideration and was clearly intended to convey title to the property.
The trial court observed that the care of an elderly and infirm person is expensive when measured in time and money. Further, the trial court found that Mitchell and Sovena Bell expended such time and energy to have earned an amount equivalent to the $5,000 stated as consideration.
Plaintiffs on appeal urge that the record shows that the money used by Mitchell Bell for the benefit of Azenor Bell was in fact Azenor Bell's money. Also it is urged that the record shows that the services claimed to be rendered by Mitchell Bell were in fact provided by the nursing home where Azenor Bell lived. Their contention is that the defendant has not overcome the presumption raised by the retention of a usufruct because he has not shown that consideration was given. Alternatively, they argue that even if consideration was given it was below one-quarter of the value of the property. Therefore, it is a donation in disguise; having a reservation of the usufruct in this donation in contravention of LSA-C.C. art. 1533 and not being in proper notarial form pursuant to LSA-C.C. art. 1536 it must fail as a donation.
[1] At the outset of the discussion of plaintiff's primary contention, that there was a lack of consideration for the sale, we note that the trial court's findings are entitled to great weight and will be affirmed on appeal unless shown to be manifestly erroneous. Further we note, that a party to an act may prove by parol evidence that consideration, although completely different than that recited in the act of sale, was in fact given. LSA-C.C. art. 2276; Citizens Bank & Trust Co. v. Willis, 183 La. 127, 162 So. 822 (1935); Wise v. Johnson, 241 So.2d 534 (La.App. 2 Cir. 1970), writ *1336 denied, 257 La. 604, 243 So.2d 273; Bash v. Sims, 210 So.2d 180 (La.App. 2 Cir. 1968).
From the record it is clear that Mitchell and Sovena Bell rendered services and assistance to Azenor Bell of varying nature since at least 1970. As outlined in the statement of facts herein, these services included tasks the nature of which occur daily. These services were freely given with no expectation of compensation. It is equally certain that Azenor Bell sought to recompense Mitchell and Sovena Bell for these past services through an act of sale. This intention of Azenor Bell was precisely delineated in a counter letter executed in conjunction with the sale, although unrecorded. This counter letter does not deviate the original recorded act of sale in the sense of establishing that the act of sale was not intended to transfer ownership of the property. This letter merely retained the use of the property in the vendor.
This retention of the use of the property raises the rebuttable presumption that the sale is a simulation according to LSA-C.C. art. 2480. This court in Russell v. Culpepper, 337 So.2d 226 (La.App. 3 Cir. 1976) held that the purpose of Article 2480 when read in conjunction with the preceding Article 2479 dealing with delivery of immovables is to raise the presumption that there has been no delivery, hence no sale. Further, it is pointed out that LSA-C.C. art. 2479 presumes delivery of an immovable as accompanying the act of sale.
It is incumbent upon Mitchell Bell to establish good faith and the reality of the sale when LSA-C.C. art. 2480 is applied. Usually the reality of the sale is shown by the intention to transfer property by the vendor and a real and true consideration given by the vendee. In line with the jurisprudence is that any sale which is accompanied by any consideration, no matter how slight, is not a simulation. Milano v. Milano, 243 So.2d 876 (La.App. 1 Cir. 1971); Russell, et al. v. Culpepper, 337 So.2d 226, [La.App. 3 Cir. 1976 (No. 5486)]; Kinney v. Kinney, 150 So.2d 671 (La.App. 3 Cir. 1963). The trial court in the instant case made a specific finding that Mitchell and Sovena Bell had expended enough time and energy in rendering assistance to Azenor Bell over a period of years to have earned an amount equivalent to the $5,000 consideration recited in the deed.
The trial court's reasoning that consideration for a conveyance of reality may take the form of past services rendered is amply supported by the jurisprudence. Bowlus v. Whatley, 129 La. 509, 56 So. 423 (La.1911); Russell, et al. v. Culpepper, 337 So.2d 226 [La.App. 3 Cir. 1976 (No. 5486)]; Robinson v. Guedry, 181 So. 882 (La.App. Orleans 1938); Succession of Viola, 138 So.2d 613 [La.App. 4 Cir. (1962)]. In the case of Bowlus v. Whatley, supra, it was stated that the rendition of services creates an obligation, and that the extinguishment of such an obligation may serve as a legal basis for the trial court's determination. As indicated by our recital of the facts from the record there was an intent to transfer the property with adequate consideration given (the extinguishment of a pre-existing obligation), the trial court properly concluded that the burden of proof of these facts was overcome and the sale could not be set aside as a simulation under LSA-C.C. art. 2480.
[2] Second, plaintiff contends that the transfer, even though not a simulation, is in fact a donation in disguise. Plaintiff states, this being the case, the donation in disguise (See LSA-C.C. art. 2444) must fail because it contravenes LSA-C.C. arts. 1533, 1536. The latter articles hold that for a donation inter vivos to be a valid transfer the donor may not reserve to himself the usufruct of the thing given and that the act of conveyance must be in authentic formbefore two witnesses and a notary public.
The complaint as to form is predicated on the fact that the evidence adduced at trial indicates that the act of sale was executed by Azenor Bell while he was in a nursing home in Lake Charles, and was not executed in the presence of a notary public, although later signed by the notary public.
*1337 This argument is without merit. The trial court concluded that the property was given for services rendered. Under the relative codal provisions dealing with donations inter vivos this act could not be classified as a true donation but rather a remunerative donation under LSA-C.C. art. 1523. LSA-C.C. art. 1526 states that the rules peculiar to donations inter vivos do not apply to remunerative donations unless the value of the thing given exceeds by one-half the value of the services rendered. The trial court held the services to be commensurate with the $5,000 consideration recited in the act of sale. We note that plaintiff produced no evidence to establish that the property was worth substantially more. Therefore, LSA-C.C. arts. 1533 and 1536 are not applicable unless there is a clear showing that the value of the thing exceeds by ½ the value of the services. [SEE: Succession of Dopler, 40 La.Ann. 848, 6 So. 106 (1888); Fenger v. Cagnolatti, 292 So.2d 901 (La.App. 4 Cir. 1974)].
The judgment of the trial court is correct.
AFFIRMED.
WATSON, J., concurs with serious reservations for the reasons expressed in dissenting opinion, Russell v. Culpepper, 337 So.2d 226 (La.App. 3 Cir., 1976).