COLE, Judge.
The issue in this case is whether or not a transfer of immovable property from parents to a son was a valid sale.
This litigation arises out of a transfer of immovable property in Pointe Cou-pee Parish from Joseph H. Guerin and Sarah D. Guerin to their son, John Roy Guerin, on March 6, 1971. The transfer was by authentic act on a standard “sale with mortgage” form. The property was fully described, as were three prior sell-offs from the larger tract. (See Appendix I for the complete description.) The description gave no total acreage or arpent figure but described the property as a tract having a front of three arpents, more or less, on the Upper Chenal of False River, by a depth of forty arpents, more or less. Following this, specific boundaries or tenements were given for all four sides. Such a sale would therefore be classified as a sale per aver-sionem rather than a sale by measure or by lump. See Civil Code Article 2495,[1] Kile v. Louisiana Limestone Aggregates, Inc., 378 So.2d 978 (La.App. 3rd Gir.1979), writ refused 380 So.2d 71 (La.1980).
The act of sale stated the consideration was $40,000.00 plus the vendors’ reservation of the right of usufruct on a portion of the property sold. The $40,000.00 was represented by the buyer’s promissory note, payable in monthly installments of $150.00 with interest from maturity at five percent per annum. Sellers retained a vendors’ lien and special mortgage. The sellers also reserved the usufruct of their residence and the grounds surrounding it (measuring *1056 250 feet by 175 feet) for the remainder of their natural lives. Further, they retained the exclusive right to harvest the annual pecan crop from all pecan trees on the property. Both usufructs were to continue until the death of the survivor of the two sellers.
Joseph H. Guerin died on March-26,1977. This suit was filed on October 28, 1980 by his surviving spouse, Sarah D. Guerin, and three of their children: Joseph W. Guerin, Sr., Thomas D. Guerin and Nancy Guerin Couvillion. John Roy Guerin, the vendee,' and his wife, Sandra Fairchild Guerin, were named as defendants.
Plaintiff, Sarah D. Guerin, contended she never consented to transfer the property and was forced to sign the act of sale against her will. The other plaintiffs contended the transaction was a simulated sale; that no money was actually paid, and that the transaction was for the sole purpose of depriving petitioners of their rightful share of the property. All petitioners prayed the purported sale be declared a simulated sale and hence null and void, thereby entitling them to be recognized as owners in indivisión with John Roy Guerin. In the alternative, petitioners prayed the transaction be declared a donation in. disguise and that their legitime be recognized. There followed objections of vagueness and no cause of action and an intervention by Wagner and Brown, a Texas general partnership. The partnership asserted its ownership of an undivided interest in a certain oil, gas and mineral lease which was executed by John Roy Guerin, as lessor, in favor of Ennex, Inc., as lessee, on November 18, 1977 and recorded on December 8, 1977.
After the objections of vagueness and no cause of action were partially sustained, the plaintiffs filed a supplemental and amended petition. They alleged that if the conveyance to John Roy Guerin was not a simulation or if it was found that he had in fact paid or obligated himself to pay a consideration for the property, then the conveyance was a donation in disguise because the consideration for the transfer was less than one-fourth of the fair market value of the property. Plaintiffs further contended that the transfer was absolutely null because it was in fact a donation and the donors had reserved the usufruct over the property in contravention of Article 1533.[2] In the further alternative plaintiffs also sought to have the property collated to the succession of Joseph H. Guerin. They alleged further that a portion of the disputed property was the separate property of Joseph H. Guerin and a portion of it was community property belonging to Joseph H. Guerin and Sarah D. Guerin. Sarah Guerin sought to be restored as the owner of her share of the community property.
By further supplemental and amended petitions, Wagner and Brown, Ennex, Inc., Ennex, Ltd., Frank’s Petroleum, Inc., EPX Company, Bank of New Roads, Loretta K. Guerin, Kathleen Guerin Thomas and John Roy Guerin, as the administrator of the estate of his minor child, John Robert Gue-rin, were named as additional defendants. (For purposes of this opinion, we will refer to Wagner and Brown, Ennex, Inc., Ennex, Ltd., Frank’s Petroleum, Inc., EPX Company and their successors as the “oil company” defendants, their interests all having arisen out of the mineral lease executed by John Roy Guerin on November 18, 1977.) The interest of the Bank of New Roads arose out of a collateral mortgage executed by John Roy Guerin on October 20, 1976, recorded on the same date, affecting the entire tract of land. The remaining defendants are children of John Roy Guerin and Sandra Fairchild Guerin who were made beneficiaries of an act of donation to an irrevocable inter vivos trust which was duly recorded on August 28, 1980.
As a further complication, an intervention was filed by Mid American Oil & Gas Investments, Ltd. (which will be considered as one of the oil company defendants) and *1057 by Sarah D. Guerin as the provisional ad-ministratrix of the succession of Joseph H. Guerin.
After various motions for summary judgment and other exceptions were disposed of by the trial court, trial on the merits was held and the court found as follows:
“The 1971 transfer to John Roy Guerin was not a simulated sale under Civil Code Article 2480.
“The 1971 transfer to John Roy Guerin was a donation-in-disguise under Civil Code Article 2444 because the price was less than one-fourth (Vi) the value of the immovable.
“The partial usufruct reservation did not render null and void the donation because Article 1583 applies only to gratuitous donations.
“The property is ordered returned to the mass of the succession to restore equality among the heirs. All fruits and revenues, and any advantages or benefits which John Roy Guerin may have received as an advance of his inheritance must also be returned.
“The property returns to the mass of the succession, subject to and encumbered with the 1976 mortgage in favor of the Bank of New Roads and the 1977 ‘oil, gas and mineral lease.’
“Any diminuition (sic) in value of the immovable due to the real rights burdening the property must be accounted for by John Roy Guerin under Civil Code Article 1264.”
The formal judgment, purportedly in conformity with the written reasons of the trial judge, was signed on the 24th of November, 1982. Therein the sale in question was declared to be a donation in disguise within the meaning of Article 2444.[3] The judgment stated that as such this transfer constituted an advance on the inheritance of John Roy Guerin and ordered the property to be collated in accordance with Articles 1227, et seq., and returned in kind to the mass of property comprising the succession of Joseph H. Guerin. In addition, the plaintiffs were' given a money judgment in the amount of $73,057.00 representing the various fruits and revenues received by the defendants from the property in question. The defendants’ donation of the mineral interests to their children was declared null and void as to the plaintiffs, and such mineral interests were ordered returned to the succession of Joseph H. Guerin for further disposition in accordance with the succession laws of the State of Louisiana. Finally, the interests of the Bank of New Roads and the oil company defendants were recognized as prevailing over the interests of the plaintiffs; therefore the property, when returned to the succession of Joseph H. Guerin, would still be subject to the collateral mortgage and the mineral lease, but the diminution caused thereby would be charged to the defendants.
Defendants John Roy Guerin and Sandra Fairchild Guerin[4] both perfected devolutive appeals, as did all of the plaintiffs insofar as the judgment was in favor of the oil company defendants. The judgment insofar as it was in favor of the Bank of New Roads has become final.
On this appeal, defendants-appellants John Roy Guerin and Sandra Fairchild Gue-rin assert the trial court erred as follows: (1) in holding that “price” within the context of Article 2444 means the “economic or time value” of the promissory note given in representation thereof; (2) in fixing the value of the property which was conveyed; and (3) in ordering collation in this action which is an action to declare a conveyance invalid and is not a suit directly involving the succession of Joseph H. Guerin.
*1058 The procedural posture of this case is quite complicated because the property-transferred consisted of both separate and community property and because one of the sellers, Sarah D. Guerin, is still living. The conclusion which we reach herein, however, makes it unnecessary to decide several issues. We need not determine whether or not Sarah D. Guerin can attack a transfer of her husband’s separate property, whether or not the option to collate in kind or to collate by taking less can be exercised by anyone other than the heir from whom the collation is due, whether or not the heir whose property is collated has the right to renounce the succession as an alternative to collation, and whether or not a money judgment can be rendered in this action as a part of the ordered collation.
We conclude the transaction from Joseph H. Guerin and Sarah D. Guerin to John Roy Guerin on the 6th day of March, 1971 was neither a “pure simulation” nor a “disguised transfer” but was in fact a legitimate sale. It is uncontroverted that Joseph H. Guerin intended to sell the property to his son, Roy. It is not disputed that payments were made and are still being made by the buyers to the sellers. This leaves two questions to be answered. One, was the “price" paid in 1971 the figure of $40,000.00 stated in the sale with mortgage or was it the economic value of the promissory note which was given in representation of the price? Two, does Civil Code art. 2444 apply to Mrs. Sarah D. Guerin with reference to her interest in the community property which was transferred?
Answering the questions in reverse order, we conclude Mrs. Guerin can not take advantage of article 2444 but has only the action to set aside the transfer of community property on the basis of fraud and duress. We conclude without any hesitation whatsoever that this cause of action was not proven. The only evidence concerning Mrs. Guerin’s duress was her own testimony that Mr. Guerin said he would leave if she did not sign the papers. This is patently insufficient. Articles 1848, 1851. See Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953), rehearing denied 1953; and Lewis v. Lewis, 387 So.2d 1206 (La. App. 1st Cir.1980).
As to the second question, we disagree with the trial court that “price” under Article 2444 is the real value of the consideration given at the time of the sale and since the “economic value” of the promissory note on the date of the sale was only $18,638.16, that this was the “price." We further disagree with the trial court in its findings that the property described in the sale contained a total of 102.86 acres rather than 89.89 acres as shown on the only actual survey admitted into evidence. Finally, we disagree with the trial court in its conclusion that the property transferred had a value in 1971 of $1,000.00 per acre. Even if we were to accept such a valuation, the provisions of Article 2444 would not be met since the price ($40,000.00) would not be below one-fourth of the real value (as determined by the trial court) of the immovable sold.
Perhaps the primary issue which must be faced is the argument made by plaintiffs that “price” under Article 2444 is the “economic value” of the promissory note at the time of sale which, according to plaintiffs’ witness, was $18,638.16. Plaintiffs argue further that the articles relating to lesion, specifically Articles 1870 and 1871, should be engrafted to the provisions of Article 2444. Although this argument is ingenious it is without justification or authority. Lesion is a specific remedy with specific rules and a specific prescriptive period. Articles 1860, et seq., and Articles 2589, et seq. Joseph H. Guerin and Sarah D. Guerin had the right to bring a suit to set aside the transfer to John Roy Guerin for a period of four years after the date of the sale. Articles 1876, 2595. Obviously, they chose not to do so.
Article 2464 sets out the essential elements of price. This article is devastating to the plaintiffs’ argument. It reads as follows:
*1059 “The price of the sale must be certain, that is to say, fixed and determined by the parties.
“It ought to consist of a sum of money, otherwise it would be considered as an exchange.
“It ought to be serious, that is to say, there should have been a serious and true agreement that it should be paid.
“It ought not to be out of all proportion with the value of the thing; for instance, the sale of a plantation for a dollar could not be considered as a fair sale; it would be considered as a donation disguised.”
We find no merit in the argument that Joseph H. Guerin and his son fixed and determined a price of $18,638.16. Hypothetically, if six months after the transfer, John Roy Guerin and Sandra F. Guerin had decided to pay off the indebtedness to their vendors, could they have liquidated their obligation for $18,638.16 less any monthly payments previously made? The vendees did not prepare a negotiable promissory note and then bargain for its exchange for the property. To the contrary, the parties agreed upon a fixed sum of money ($40,000.00). Considering these circumstances — a fixed price, the reservation of the usufruct of the house, and the reservation of the pecan crops — we can conclude only that this was a serious consideration, not at all out of proportion with the value of the thing received.
After the parties agreed upon the price, a separate and distinct issue arises: the discharge of the buyer’s obligation to pay the price. Article 2549. The price may be paid on the day of the transfer or at some later date. Article 2550. Interest on the unpaid price may or may not be stipulated according to the will of the parties. Article 2553. The term of payment given by the seller to the buyer and provisions for interest or lack thereof do not make the purchase price uncertain. To hold otherwise would contradict the plain terms of Article 2464.
The trial court relied upon Article 2239 as authority for admitting parole evidence to prove the economic valuation of the “price”. This article permits forced heirs to use parole evidence to show a stated price in the act of transfer was in fact not paid. In other words, parole evidence may be used to show facts at variance with those stated in the deed. The end result is to determine the true intent of the parties. In this case, it is conceded there is nothing false stated in the act of transfer under consideration. The transfer in question was not a pure simulation and was in fact intended by both sellers and buyers to be a sale for a certain and serious price. We find nothing in Stevens v. Stevens, 227 La. 761, 80 So.2d 399 (1955) nor Bell v. Bell, 339 So.2d 1333 (La.App. 3rd Cir.1976), relied upon by the trial court, which would support the “economic valuation theory”. In Stevens, the consideration was $2,500.00 cash. In Bell, there was an attempt to prove a consideration other than that stated in the sale. In such a case, the court should determine if the actual consideration is equivalent to the value of the thing transferred. But where the stated consideration and the actual consideration are the same, there is no further inquiry.
Having concluded that the “price” is $40,000.00, the next question is whether or not that price is below one-fourth of the property’s real value at the time of the sale. The record contains a great deal of testimony concerning the actual acreage of the tract, together with the testimony of expert witnesses who attempted to fix a “fair market value” as of 1971. In spite of the fact that the only survey introduced into evidence showed an acreage of 89.89 acres, the trial court adopted the figure of 102.86 acres as the amount of land transferred. We do not agree with this conclusion nor do we agree that a value of $1,000.00 per acre in 1971 is realistic. However, even adopting the conclusions of the trial court that the land had a value of $101,940.00, a consideration of $40,000.00 would exceed one-fourth of this “real va- *1060 lúe” at the time of sale.[5] Accordingly, we conclude plaintiffs have failed to prove the necessary elements under Article 2444 to set aside the sale.
Finally, we believe the decision of our Supreme Court in Owen v. Owen, 336 So.2d 782 (La.1976), precludes us from considering the plaintiffs’ arguments concerning collation and reduction. In a case with remarkably similar facts, the Supreme Court said, page 789:
“Collation, however, is not properly de-mandable in this suit which is primarily an action to set aside a sale by a parent to one of his children on the ground that it is a donation in disguise and a donation omnium bonorum. Collation is made only to the succession of the donor, C.C. art. 1242, and it is clear that a demand for collation must be brought incident to a succession proceeding, and not made part of a suit to nullify a sale.” (Citations omitted.)
Owen and the cases cited therein are clear authority for sustaining the position of the oil company intervenors and defendants as well as the Bank of New Roads who acted in reliance on the public records. The holding of the trial court in connection with these intervenors and defendants is correct.
The reason for this rule, that matters of collation and reduction must be incident to the succession proceedings, seems apparent. The obligation of collation is founded on the equality which must be observed naturally between children (and other lawful descendants) who divide the succession of their father or mother among themselves. Article 1229. Many options are available to the heir who must collate. Articles 1237, 1255, 1269. See Estate of Schwegmann v. Schwegmann, 344 So.2d 13 (La.App. 4th Cir.1977). The right of seeking a reduction of an excessive donation, either inter vivos or mortis causa, Article 1502, must be preceded by a calculation under Article 1505. Donations inter vivos cannot be reduced until the value of all the property comprised in donations mortis causa be exhausted. Article 1507. These stated principles make it apparent that these are succession matters and must be dealt with accordingly.
Plaintiffs contend, however, that the intervention of the administratrix of Joseph Guerin’s succession in some way permits the trial court to order collation and exercise the options available to the heirs. We disagree because the intervention of a succession representative cannot convert an action to annul a sale into a succession proceeding. Even assuming ar-guendo that such a procedure was possible, we would still be forced to conclude that there is insufficient evidence in the record to decide the questions which would thus be presented.
Accordingly, we hold that the plaintiffs have failed in their burden of proof under Article 2444 and that they are not entitled to demand collation in these proceedings. The judgment of the trial court is therefore reversed in part and plaintiffs’ suit, along with the intervention of the provisional ad-ministratrix of the succession of Joseph H. Guerin, is dismissed. All costs of court are assessed against plaintiffs.
REVERSED IN PART; AFFIRMED IN PART.
SAVOIE, J., concurs specially.
APPENDIX I
A certain tract of land, with all buildings and improvements thereon, situated on what is commonly called the Island of False River, in the Parish of Pointe Cou-pee, State of Louisiana, said tract of land having a front of three (3) arpents, more or less, on the Upper Chenal of False River by a depth of forty (40) arpents, more or less, *1061 and is bounded as follows: In front of North by said Upper Chenal of False River, on the Upper Side or East by property formerly of Willie Chustz and now in part by property of Joseph Henry Morel, III, and in part by property of J. Clement Chustz, on the lower side or West by property of heirs of Adam Guerin, or assigns, and in the rear or South by property formerly of Ventress, now of John E. Jumon-ville, or assigns.
Being the same property acquired by the present vendor, Joseph Hazael Guerin, as follows: A portion thereof was acquired by purchase from Bank of New Roads by act of sale dated January 3, 1917, recorded under Entry No. 1057 of Book “A”, conveyance records of Pointe Coupee Parish, Louisiana, and the remainder was acquired by purchase from Mrs. Bertha St. Dizier Gau-din and Dr. James 0. St. Dizier by act of sale dated October 21,1931, recorded under Entry No. 1455 of Book “H”, conveyance records of Pointe Coupee Parish, Louisiana. Subject to: Right of way for the State Hardsurfaced Highway which runs along False River (now known as La. State Highway No. 414).
LESS AND EXCEPT from the above described property, the following lots or parcels sold therefrom:
(1)A certain lot or parcel of land, fronting seventy-one (71) feet on Highway No. 414, by depth between parallel lines of one hundred fifty (150) feet; the eastern or upper boundary line of the lot of ground herein described is 213.2 feet distant from the western, or lower, boundary line of property belonging formerly to Heirs of Mr. and Mrs. Willie Chustz; and which lot of ground is bounded North by the right of way of said Public Highway, East, South and West by remainder of larger tract of land of Joseph Hazael Guerin, from this lot was taken.
Being the same property sold by Joseph Hazael Guerin to Joseph Warren Guerin by act of sale dated October 2, 1948, recorded under Entry No. 411 of Book 22, conveyance records of Pointe Coupee Parish, Louisiana.
(2) A certain tract of land, containing 5.88 acres, more or less, lying between the upper Chenal of False River and the Public State Highway along False River (now known as La. State Highway No. 414), having a front of five hundred twelve (512) feet, more or less, on the right of way of said Highway by a depth extending to the Upper Chenal of False River and is bounded North by said Upper Chenal of False River, East by property of Heirs of Mr. and Mrs. Willie Chustz, or assigns; South by the right of way of said State Highway No. 414, and West by property of Heirs of Adam Guerin, or assigns, said tract of land being described more fully in the act of sale by Joseph Hazael Guerin to John Roy Guerin hereinafter referred to, in two parcels, and is more fully shown and described on a map of survey thereof, made by J.N. Garrett, Civil Engineer, dated February 10, 1958, a copy whereof is recorded under Entry No. 125 of Book 46, conveyance records of Pointe Coupee Parish, Louisiana.
Being the same property sold by Joseph Hazael Guerin to John Roy Guerin by act of sale dated March 31, 1958, recorded under Entry No. 125 of Book 46 of the conveyance records of Pointe Coupee Parish, Louisiana.
(3) A certain lot or parcel of land, situated on what is commonly called the Island of False River, in the Parish of Pointe Cou-pee, State of Louisiana, being in Section 117 , Township Four (4) Range Ten (10) East and being more particularly described as follows, to-wit:
Starting at a point on the South Boundary of Louisiana Highway No. 414, said point being located 30 feet from the center line of the asphalt surfaced roadway and on the property line dividing land owned by Joseph Hazael Guerin and Henry Morel III, thence N 69° 52' W, along the South Boundary of La. Hwy. No. 414 a distance of 177.2 feet, to the point of beginning; thence proceed S 21° 00' W, a distance of 175.0 feet and corner; thence proceed N 69° 52' W, a distance of 107.0 feet and corner; thence proceed N 21° 00' E, a dis *1062 tance of 25.0 feet and corner, said corner being the Southwest corner of a lot presently owned by Joseph Warren Guerin, thence S 69° 52' E, along a property line presently dividing property owned by the Vendor and the Vendee, a distance of 71.0 feet and corner, said corner being the Southeast corner of a lot presently owned by the Vendee; thence N 21° 00' E, along a property line dividing property presently owned by the Vendor and the Vendee, a distance of 150 feet and corner, said corner being the Northeast corner of a lot presently owned by the Vendee and located 30 feet from the center line and on the South Boundary of La. Hwy. No. 414,; thence S 69° 52' E along the South Boundary of La. Hwy. No. 414 a distance of 36.0 feet, to the Point of Beginning, containing 0.185 acres and being more particularly shown on the Map of Survey by J.N. Garrett, Civil Engineer, dated Peb. 13, 1971, an official copy of which map is hereto annexed and hereof made a part for greater certainty of description.
The property herein presently sold and conveyed is taken from two larger tracts of land which were acquired by the present vendor, Joseph Hazael Guerin, as follows, one by purchase from Bank of New Roads by act of sale dated January 3rd, 1917, recorded under Entry No. 1057 of Conveyance Book “A”, and the other by purchase from Mrs. Bertha St. Dizier Gaudin and Dr. James O. St. Dizier by act of sale dated October 21,1931, recorded under Entry No. 1455 of Conveyance Book “H”, records of Pointe Coupee Parish, Louisiana.
For identification:
/s/ Joseph Hazael Guerin
/s/ Mrs. Sarah Dunkley Guerin

. All further statutory references in this opinion are to the Louisiana Civil Code.

. At the time of the transfer in question, article 1533 prohibited a donor from reserving the usu-fruct of immovable property for himself. The article was amended in 1974 to allow such reservations.

. This article reads as follows:
"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.”

. At the time of judgment Sandra Fairchild Gue-rin had apparently remarried and was listed as Sandra Fairchild Guerin Greene.

. We note a discrepancy in the trial court's figures; 102.86 acres, valued at $1,000 each, equals a sum of $102,860 rather than $101,940. The court apparently subtracted .92 acre from the total, perhaps recognizing that a small portion of the tract was retained under usufruct. The portion retained, measuring 250 ft. X 175 ft., is actually 1.004 of an acre, but this discrepancy is of no significance.