499 So.2d 1050 (1986)
Dora B. BORDELON, et al., Plaintiffs-Appellees,
v.
Emile A. BORDELON, Jr. and
Davie Lee Bordelon, Defendant-Appellant.
No. 85-1025.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
*1051 Leo Boothe, Jonesville, for defendant-appellant.
William J. Bennett, Marksville, for plaintiffs-appellees.
David H. Clark, Lafayette, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and YELVERTON, JJ.
GUIDRY, Judge.
Plaintiffs, Dora Bordelon Bordelon, Flora Bordelon Paul and Ultima Bordelon Teague, filed this action seeking to have two acts of sale of immovable property declared to be simulations and therefore absolute nullities. The trial court held that a sale dated February 13, 1958 from Emile Alton Bordelon, Sr. to Emile Alton Bordelon, Jr. (defendant herein) was a nullity, but rejected plaintiffs' demand as to a sale from Eura Bordelon, widow of Emile A. Bordelon, Sr. to Emile Alton Bordelon, Jr., husband of Davie Lee Normand, dated June 15, 1966 sale. Defendant, Davie Lee Bordelon, appeals. Plaintiffs and Emile A. Bordelon, Jr. have neither appealed nor answered defendant's appeal.
After careful study of the record, we find that the trial judge, in excellent written reasons for judgment, has correctly decided the issues presented in this case. However, we do find error in his assignment of ownership for reasons which we fully state. We are therefore pleased to *1052 adopt as our own the trial judge's statement of facts and his thorough and well stated reasons for judgment.
"On February 13, 1958, Emile A. Bordelon, Sr., husband of Eura Bordelon signed an act of sale purporting to be a credit sale to his son, Emile A. Bordelon, Jr., a single man, of a tract of land recited to contain 140 acres and located in Sections 16 and 21, T3N-R5E, Avoyelles Parish, Louisiana. The act recited a total price of $15,000 with $3,000 paid in cash and the balance represented by twelve promissory notes of $1,000 each, payable annually. The 140 acres consisted of (a) approximately 120 acres (hereinafter referred to as `the 120 acre tract') of which an undivided ½ interest was the separate property of Emile A. Bordelon, Sr. and the other ½ belonged to the community existing between him and Eura Bordelon; and (b) one tract consisting of 12.46 acres and another tract consisting of 8.5 acres (hereinafter referred to jointly as `the 20 acre tract') which was fully community property.
On February 3, 1963, Emile A. Bordelon, Jr., signed an act purporting to be a sale from him to his mother, Eura Bordelon, recited to be the widow of Emile A. Bordelon, Sr., of the identical property, said sale containing a recited consideration of $20,000.
On June 15, 1966, Eura Bordelon signed an act purporting to be a credit sale to her son, Emile A. Bordelon, Jr., then married to Davie Lee Bordelon, of the identical property for a recited consideration of $10,000 payable in ten annual installments of $1,000 each, bearing 5% per annum interest and containing as an additional consideration a provision that `vendee does hereby agree to care for and furnish support and maintenance unto Eura Guillot Bordelon for the rest of her natural life.'
This is an action by Dora B. Bordelon, Flora B. Paul, Ultima B. Teague, and Eura Bordelon to rescind the sales of February 13, 1958 and June 15, 1966 described above on the basis that no consideration was paid and that they were in fact donations in disguise. The actions allege in the alternative that the sales were subject to rescission on the grounds of lesion and as a further alternative, that if valid as donations, they were subject to collation.
The defendants in this action are now divorced and at the present time are litigating a community property settlement in another proceeding. That settlement is necessarily contingent upon the outcome of this litigation. Emile A. Bordelon, Jr., although a defendant in this action which was filed by his sisters, is clearly in sympathy with their action and is hostile to the other defendant, his former wife. Defendant, Davie Lee Bordelon, alleged that this action is a conspiracy between Emile A. Bordelon, Jr. and his sisters to deprive her of her alleged community interest in the tract. She filed a third party demand against her former husband alleging that she has been damaged by this conspiracy. No evidence was offered in support of the third party demand and it is therefore rejected.
The family history is essential to a proper consideration of this action. Emile A. Bordelon, Sr. and Eura Guillot Bordelon were married on December 3, 1914 and of said marriage five children were born, namely Dora B. Bordelon, Flora Bordelon Paul, Ultima Bordelon Teague, Emile A. Bordelon, Jr., and Foster J. Bordelon. Emile A. Bordelon, Sr. died intestate on April 12, 1958 and Foster J. Bordelon died intestate and without issue on September 30, 1982.
The primary basis for the plaintiffs' action to annual is presumably Article 2444 of the Louisiana Civil Code which provides as follows:
`The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.'

*1053 Without detailing the testimony relating to the sale of February 13, 1958, the court finds that the evidence clearly shows that the purported sale was a simulation with no consideration having been paid or intended; accordingly, that said sale was a nullity.
The jurisprudence is well settled that Eura Bordelon cannot take advantage of Article 2444 to annul a sale which she signed. Guerin v. Guerin, 449 So.2d 1053 (1984).[1] That is no longer an issue, however, because she withdrew from the action as a party plaintiff prior to trial by ex parte motion and order.
Having concluded that the purported sale of February 13, 1958 was a nullity, the ownership of the subject property can best be determined by reciting the changes of ownership in chronological order. As a result of the death of Emile A. Bordelon, Sr. on April 12, 1958, the ownership of the 140 acre tract succeeded as follows:
 120 Acre Tract:
Eura Bordelon 5/20
Dora B. Bordelon 3/20
Flora B. Paul 3/20
Ultima B. Teague 3/20
Foster J. Bordelon 3/20
Emile A. Bordelon, Jr. 3/20
 20 Acre Tract:
Eura Bordelon 5/10
Dora B. Bordelon 1/10
Flora B. Paul 1/10
Ultima B. Teague 1/10
Foster J. Bordelon 1/10
Emile A. Bordelon, Jr. 1/10
On February 3, 1963, Emile A. Bordelon [Jr.] purported to sell to his mother, Eura Bordelon, the entire 140 acre tract, title to which was in his name by virtue of the 1958 sale heretofore declared to be a nullity. The sale of February 3, 1963, is not under attack in this litigation and must be recognized as valid. However, Emile A. Bordelon, Jr. could convey only what he owned and that was the interest which he inherited from his father, Emile A. Bordelon, Sr. Accordingly, the said sale resulted in the following ownership of the subject property:
 120 Acre Tract:
Eura Bordelon 5/20 + 3/20 = 8/20
Dora B. Bordelon (unchanged) 3/20
Flora B. Paul (unchanged) 3/20
Ultima B. Teague (unchanged) 3/20
Foster J. Bordelon (unchanged) 3/20
Emile A. Bordelon, Jr. 3/20 - 3/20 = 0
 20 Acre Tract:
Eura Bordelon 5/10 + 1/10 = 6/10
Dora B. Bordelon (unchanged) 1/10
Flora B. Paul (unchanged) 1/10
Ultima B. Teague (unchanged) 1/10
Foster J. Bordelon (unchanged) 1/10
Emile A. Bordelon, Jr. 1/10 - 1/10 = 0
The next incident in the ownership is the purported sale from Eura Bordelon to Emile A. Bordelon, Jr. (then married to Davie Lee Bordelon) of the entire 140 acres, said sale being dated June 15, 1966. This action asserts that this sale was a nullity on the grounds cited earlier but the evidence fails to establish these allegations. There is contradictory evidence on the issue of whether the recited consideration was in fact paid but there is no question that when the instrument was signed, it was the intention of the purchaser to pay and it was the intention of the buyer to be paid. Even the testimony of Emile A. Bordelon, Jr., who is clearly sympathetic with plaintiffs' position, admits this. Accordingly, when the sale was executed it was valid and must be recognized as such. The possibility that payment was not made cannot nullify what was a valid act of sale. Additionally, there is insufficient evidence to prove that the consideration was not in fact paid. The evidence also fails to establish that Emile A. Bordelon, Jr. and Davie Lee Bordelon did not fulfill their obligation to care for Eura Bordelon as required in the act of sale. The evidence establishes that Eura Bordelon voluntarily left the homeplace where she was being cared for because she did not want to go through another flood. There can certainly be no establishment of a claim for failure of consideration when the obligee would not permit the obligors to perform.

*1054 Plaintiffs assert that since Eura Bordelon continued living in the family home which was located on the subject property, that there is a presumption of simulation under Article 2480. However, the sale required the purchasers to care for Eura Bordelon and that would certainly account for her remaining on the premises. Additionally, the only thing she continued to possess was the house as the record shows that Emile A. Bordelon, Jr. farmed the land as his own. The case of Adams v. Trichel, 304 So.2d 740 (La.App. 2nd Cir.1974) cited in plaintiffs' brief does not support plaintiffs' position. The court holds that the sale of June 15, 1966 was valid.
Since Eura Bordelon was not the full owner of the property, the conveyance of June 15, 1966 could be only of the interest which she owned. At the time of the sale, Emile A. Bordelon, Jr. was married to Davie Lee Bordelon and accordingly, the interest acquired in said sale is community. As a result of the sale of June 15, 1966 the ownership vested as follows:
 120 Acre Tract:
Eura Bordelon 8/20 - 8/20 = 0
Dora B. Bordelon (unchanged) 3/20
Flora B. Paul (unchanged) 3/20
Ultima B. Teague (unchanged) 3/20
Foster J. Bordelon (unchanged) 3/20
Emile A. Bordelon, Jr. and
 Davie Lee Bordelon 8/20
 20 Acre Tract:
Eura Bordelon 6/10 - 6/10 = 0
Dora B. Bordelon (unchanged) 1/10
Flora B. Paul (unchanged) 1/10
Ultima B. Teague (unchanged) 1/10
Foster J. Bordelon (unchanged) 1/10
Emile A. Bordelon, Jr. and
 Davie Lee Bordelon 6/10"
At this point in his reasons for judgment, the trial judge noted the change in ownership in the subject property resulting from Foster J. Bordelon's death on September 30, 1982. The trial court, relying on La. C.C. art. 911, apportioned one-fourth of Foster's ownership interest to his mother, Eura, and the remaining three-fourths to his brother and sisters. This was error. At the time of Foster's death, La.C.C. art. 911 had been repealed and was replaced by La.C.C. art. 891, effective January 1, 1982, which provides as follows:
"If the deceased leaves no descendants but is survived by a father, mother, or both, and by a brother or sister, or both, or descendants from them, the brothers and sisters or their descendants succeed to the separate property of the deceased subject to a usufruct in favor of the surviving parent or parents. If both parents survive the deceased, the usufruct shall be joint and successive. A parent, for purposes of this and the following article, includes one who is legitimately filiated to the deceased or who is filiated by legitimation or by acknowledgement under Article 203 or by judgment under Article 209 or who has openly and notoriously treated the child as his own and has not refused to support him."
The proper apportionment of the disputed property following Foster's death is as follows:
 120 Acre Tract:
Eura Bordelon Usufruct over 3/20
Dora B. Bordelon 3/20 + 3/80 = 15/80
Flora B. Paul 3/20 + 3/80 = 15/80
Ultima B. Teague 3/20 + 3/80 = 15/80
Emile A. Bordelon, Jr. (separate) 3/80
Emile A. Bordelon, Jr. and
Davie Lee Bordelon (unchanged) 32/80
 20 Acre Tract:
Eura Bordelon Usufruct over 1/10
Dora B. Bordelon 1/10 + 1/40 = 5/40
Flora B. Paul 1/10 + 1/40 = 5/40
Ultima B. Teague 1/10 + 1/40 = 5/40
Emile A. Bordelon, Jr. (separate) 1/40
Emile A. Bordelon, Jr. and
Davie Lee Bordelon (unchanged) 24/40
As a result of the trial court's error above, its final assignment of ownership percentages in the subject property was also erroneous. We recalculate the ownership percentages as follows:
 120 Acre Tract:
 Trial
 Court's Our
 Assignment; Assignment;
Eura Bordelon 3.7500% 15% in usufruct only
Dora B. Bordelon 17.8125% 18.75%*
Flora B. Paul 17.8125% 18.75%*
Ultima B. Teague 17.8125% 18.75%*
Emile A. Bordelon, Jr. 22.8125% 23.75%*
Davie Lee Bordelon 20.0000% 20.00%
 *3.75% of each interest
 is subject to the
 usufruct of Eura Bordelon
*1055
 20 Acre Tract:
 Trial
 Court's Our
 Assignment; Assignment;
Eura Bordelon 2.5000% 10% in usufruct only
Dora B. Bordelon 11.8750% 12.50%*
Flora B. Paul 11.8750% 12.50%*
Ultima B. Teague 11.8750% 12.50%*
Emile A. Bordelon, Jr. 31.8750% 32.50%*
Davie Lee Bordelon 30.0000% 30.00%
 *2.5% of each interest
 is subject to the usufruct
 of Eura Bordelon
The appeal in the instant case was instituted solely by defendant, Davie Lee Bordelon. Davie Lee raises the following issues on appeal: (1) The trial court erred in not finding that the promissory notes given by Emile A. Bordelon, Jr. to Emile A. Bordelon, Sr. in the February 13, 1958 sale were a valid consideration for the sale; (2) The trial court erred in declaring the 1958 sale a nullity vis-a-vis Davie Lee Bordelon, a third person dealing on the face of the public records; and, (3) The trial court erred in failing to find that Eura Guillot Bordelon's interest in the subject property, which she inherited from her deceased son, Foster, inured to the benefit of Davie Lee and Emile A. Bordelon, Jr. under the doctrine of after-acquired title.

FEBRUARY 13, 1958 SALE
Appellant argues that the trial court erred in finding the 1958 sale a nullity, claiming that the ten promissory notes given by Emile, Jr. to his father were a valid consideration for the sale. Davie Lee also argues that, since the trial court determined that the purported 1958 sale was in fact a donation in disguise, the heirs of Emile, Sr. are relegated to an action for collation, which action has prescribed.
We note at the outset that the instant action is a suit by the heirs of Emile, Sr. to have the 1958 sale in question declared a pure simulation, not a donation in disguise. We also note that appellant errs in stating that the trial court determined that the 1958 transaction was in fact a donation in disguise. To the contrary, the trial court found that the transaction was a pure simulation and, therefore, an absolute nullity. The Supreme Court in Owen v. Owen, 336 So.2d 782 (La.1976), explained the difference between a simulated sale and a donation in disguise as follows:
"... In our law, a simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations, and disguised transfers.5 In a pure simulation, sometimes called a non-transfer, the parties only pretend to transfer the property from one to the other, but in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed, which was that no transfer had in fact taken place. In a contest between a vendor and vendee in this situation the true intent of the parties is effectuated and the courts hold that no transfer took place because the simulated sale is an absolute nullity. Successions of Webre, 247 La. 461, 172 So.2d 285 (1965); Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932); Milano v. Milano, 243 So.2d 876 (La.App. 1st Cir.1971). The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but which is intended by the parties to be a gift rather than a sale. When this sort of simulation is attached successfully, as it has been here under Article 2444, the true intent of the parties is likewise effectuated by the law. A valid transfer has taken place, but its form is a donation rather than a sale and the Code articles on donations apply to the transfer. Stevens v. Stevens, 227 La. 761, 80 So.2d 399 (1955); Carter v. Bolden, 13 La.App. 48, 127 So. 111 (La.App. 2nd Cir.1930); 35 La.L.Rev. 192 (1974); 25 La.L.Rev. 313 (1965)." (footnote omitted).
The fact that promissory notes were made and executed in connection with the 1958 sale does not lend validity to the sale when it is established, as in this case, that the notes and the transfer are pure shams.
In any event, appellant has no right to question this determination of the trial court except such right as may be accorded *1056 to her under the public records doctrine which we discuss hereafter. See La.C.C. art. 2444.

PUBLIC RECORDS DOCTRINE
Appellant next contends that the trial court's judgment declaring the 1958 sale a nullity is in error, insofar as it purports to affect her community interest in the subject property since she was a third party purchaser in relying upon the public records.
Appellant's argument in this respect is founded upon settled jurisprudence to the effect that, although forced heirs are protected by law against acts designed to deprive them of their legitime, the rights granted to forced heirs cannot be extended so as to defeat the subsequently acquired rights of third persons who have purchased the property on the faith of the public records and under the belief that their vendor acquired a valid title by purchase. Thompson v. Thompson, 211 La. 468, 30 So.2d 321 (1947). See also Chachere v. Superior Oil, 192 La. 193, 187 So. 321 (1939), and Owen v. Owen, supra.
According to Louisiana's public records doctrine, third persons need only look to the public records to determine adverse claims. See La.C.C. arts. 3342 and 3347; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). La.C.C. art. 2266, redesignated as La.R.S. 9:2756, provides that all sales, contracts, and judgments affecting immovable property which shall not be recorded shall be utterly null and void except between the parties thereto and that the recording may be made at any time but shall affect third parties only from the time of recording. Moreover, La.R.S. 9:2721 provides that no sale, contract, mortgage, judgment or other instrument relating to or affecting immovable property shall be binding on or affect third persons or parties unless and until filed for registry in the office of recorder of the parish where the land or immovable property is situated, and neither secret claims nor equities nor other matters outside the public record shall be binding on or affect such third parties.
The public records doctrine was intended to protect innocent third parties who have no knowledge of the existence of any rights and/or claims against property, and allows them to take free and clear of any such unrecorded claims.
Appellant asserts that, since she was not a party to the 1958 sale between Emile, Jr. and his father, her reliance upon the public records in purchasing the property with her husband in 1966, which records gave no indication that such transaction was anything other than a valid sale, should thus be protected. The question which we are faced with, therefore, is whether or not Davie Lee Bordelon can be considered a "third person" and thus entitled to the protection afforded by the public records doctrine.
The legislature provides us with a definition of "third persons or third parties" in La.R.S. 9:2722, which provides:
"Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser, mortgagee, grantee or vendee of servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property."
After extensive research and much consideration, we are of the opinion that Davie Lee Bordelon, as the wife of one of the parties to the simulated transaction of 1958 and the wife of the purchaser in the 1966 sale, cannot be considered a third person for purposes of the public records doctrine.
At the time that Emile A. Bordelon, Jr. and Davie Lee Bordelon purchased the subject property from Eura Bordelon, the *1057 law in Louisiana was such that Emile, Jr. was the head and master of the marital community, possessing full management and control over the community of acquets and gains.[2] Emile, Jr. thus had full authority to administer the community property without the consent or permission of his wife, Davie Lee. Nonetheless, Davie Lee's one-half interest in whatever property was acquired in the 1966 sale vested in her at the time of the sale. T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La. 1975). See also United States v. Mitchell, 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971). Davie Lee herein seeks recognition of her one-half community ownership in the subject property on the basis that she acquired such as a third person in reliance upon the public records.
Our jurisprudence provides us with several cases which hold that a wife is not a third person with regard to the public records doctrine. In Baker v. Baker, 209 La. 1041, 26 So.2d 132 (1946), the Supreme Court stated:
"In the case here under consideration, Florence Ella Baker was not a third party relying on the faith of the public records, since she did not acquire the property by purchase or any other similar way, and any rights that she might have had therein must necessarily flow from, and be determined by, an acquisition by her husband of the property during the existence of the community of acquets and gains between them." (Emphasis ours).
In reliance upon the holding in Baker, supra, the court in Doherty v. Baldwin, 405 So.2d 1301 (La.App. 1st Cir.1981), also held that a wife is not a third person within the purview of the public records doctrine. Both of the cited cases concerned the right of a wife, claiming to be a third person, to prevent the introduction of parol evidence to vary recitals in conveyances of immovable property by or to her husband. Although the above cases are distinguishable on their facts, we believe that the rationale of these cases is applicable here. In Baker and Doherty, the courts held that the wives were not third persons since the rights which they acquired in the subject property were simply the result of their being married.
Davie Lee's interest in the subject property came about as a result of her being married to Emile, Jr. Therefore, in our view, Davie Lee can now claim no greater interest in the property than that validly acquired by her husband by virtue of the 1966 sale.

AFTER-ACQUIRED TITLE
Appellant's final contention on appeal is that, pursuant to the doctrine of after-acquired title, she should be recognized as the owner of that portion of the subject property which Eura Bordelon inherited as a result of the death of her son, Foster.
The only person capable of conveying title to property is the owner. La.C.C. art. 2452. However, when a vendor sells property which he does not own and later acquires title, ownership vests in the vendee. This doctrine is known as the "After-Acquired Title" doctrine. Greene v. Greene, 373 So.2d 756 (La.App. 3rd Cir. 1979), writ denied, 377 So.2d 118 (La.1979).
Appellant apparently bases her claim of after-acquired title upon the trial court's erroneous calculation as to Eura Bordelon's interest in the subject property following Foster's death. As discussed previously, Eura inherited no fee interest in the subject property from Foster. Eura inherited only a usufruct over Foster's interest in the property. Therefore, appellant's claim to the fee interest in the subject property inherited by Eura Bordelon from Foster Bordelon, under the doctrine of after-acquired title, is without merit. However, we conclude that, under such doctrine, Davie Lee Bordelon has acquired a one-half interest in the usufruct over *1058 Foster Bordelon's former interest in both tracts of land which was inherited by Eura Bordelon.
For the above and foregoing reasons, the trial court's judgment is amended so as to recognize Davie Lee Bordelon as the owner of a 7.5% interest as usufructuary in the 120 acre tract and a 5% interest as usufructuary in the 20 acre tract, being one-half of the usufructuary interest inherited by Eura Bordelon from her deceased son, Foster Bordelon. In all other respects, the judgment of the trial court is affirmed.[3] Appellant is cast for all costs of this appeal.
AFFIRMED AS AMENDED.
NOTES
[1] (La.App. 1st Cir.1984), writ denied, 450 So.2d 960 (La.1984).
[2] By Act No. 709 of 1979, effective January 1, 1980, the legislature did away with the concept that the husband was the "head and master" of the community. La.C.C. art. 2347 now provides that both spouses must concur in the alienation, encumbrance, or lease of community property.
[3] The designation of Davie Lee Bordelon's fee interest in the subject property, as set forth in the trial court's judgment dated July 26, 1985, is correct. Although we determine that the trial court judgment is incorrect, insofar as it designates the fee interest of the other parties, said judgment is now final as the other parties did not appeal or answer the appeal.