524 So.2d 25 (1988)
Hazel Pollingue MANION, Plaintiff-Appellant,
v.
O'Neil Louis POLLINGUE, Jr., et al., Defendants-Appellees.
No. 86-1056.
Court of Appeal of Louisiana, Third Circuit.
March 30, 1988.
Rehearing Denied May 5, 1988.
*26 Wiliam J. Manion, Slidell, A. Russell Roberts, Metairie, for plaintiff-appellant.
Logan & Sallinger, Barry J. Sallinger, Eugene F. Pollingue, Jr., Lafayette, Richard K. Leefe, New Orleans, William L. Pollingue, Port Barre, Albert J. Boudreaux, Opelousas, for defendants-appellees.
Before KNOLL and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KING, Judge.
The issue presented by this appeal is whether the trial court committed error in sustaining the defendants' exceptions of prescription as to plaintiff's claims for collation, reduction, and damages arising from the Succession of O'Neil L. Pollingue, Sr.
O'Neil L. Pollingue, Sr. died on October 10, 1960, leaving four children, O'Neil Pollingue, Jr., Karl Pollingue, Eugene Pollingue, and Hazel Pollingue Manion, the plaintiff in this litigation (hereinafter plaintiff). He died testate and left one-sixth of his estate to plaintiff, one-sixth to O'Neil Pollingue, Jr., with the remainder to be equally divided between his other two sons, Karl Pollingue and Eugene Pollingue. O'Neil Pollingue, Jr. was named as Executor in the will and, after administration of his father's succession, a Judgment of Possession was rendered and signed on October 30, 1962. A copy of the Judgment of Possession was mailed to the plaintiff.
The property which plaintiff seeks to have returned to the Succession of O'Neil Pollingue, Sr. was partially acquired by plaintiff's mother on February 1, 1927, when plaintiff's mother, Mrs. Zula Richard Pollingue (hereinafter Mrs. Zula Pollingue), received one-fourth of her father's estate as a forced heir. O'Neil Pollingue, Sr. and Mrs. Zula Pollingue acquired the other several thousand acres of property with community funds as property of their community of acquets and gains.
Between 1946 and 1956, O'Neil Pollingue, Sr. executed several acts of sale of immovable property to two of his sons. Mrs. Zula Pollingue did not sign any of the *27 documents transferring the ownership of this immovable property to their sons, but she did later execute a quitclaim deed on March 23, 1961, which conveyed any and all interest in her separate and community property to her three sons and their wives. These quitclaim deeds by Mrs. Zula Pollingue were recorded on January 16, 1963.
On February 15, 1985, plaintiff brought this action for collation and reduction against her brothers relative to the properties previously sold to them and also sought damages from O'Neil Pollingue, Jr., as the Administrator of her father's estate, and the attorney for the estate, William E. Logan, Jr., (hereinafter all referred to as defendants) for negligently handling the succession of her father and for conspiring with the other defendants to deprive her of her legitime.
In response to plaintiff's action, the defendants filed exceptions of prescription and no cause of action. The district court sustained the exceptions of prescription and held that the claims for reduction, collation and damages arising out of the estate of O'Neil Pollingue, Sr., had all prescribed. From this judgment, plaintiff timely filed a devolutive appeal. Defendants answered the appeal seeking damages for a frivolous appeal. We affirm the ruling of the trial court and reject defendants' claim for damages for a frivolous appeal.

FACTS
This litigation stems from a complex succession proceeding terminating on October 30, 1962, when a Judgment of Possession was rendered and signed resulting in the final distribution of O'Neil Pollingue, Sr.'s estate. In order to determine whether all of O'Neil Pollignue, Sr.'s property was properly distributed in his succession proceeding we must review the acquisition of the property by O'Neil Pollingue, Sr. and Mrs. Zula Pollingue and examine the various transactions whereby this property was transferred by them.
Prior to the various transfers of immovable property, Mr. and Mrs. O'Neil Pollingue, Sr. were owners of farm property with grain storage and rice drying facilities. Part of this property was inherited by Mrs. Zula Pollingue on February 1, 1927, when her father, Dr. Richard, died. Mrs. Zula Pollingue's undivided interest of her father's estate totaled $9,886.50. The Richard farm property, which was located in Port Barre, Louisiana, less the one-fourth forced interest inherited by Mrs. Zula Pollingue, was sold to O'Neil Pollingue, Sr. and became a part of the Pollingue community. At a later date, O'Neil Pollingue, Sr. purchased another 233 acres on September 21, 1933, with community funds. On November 23, 1940, the community purchased another 2,401 acres which was financed by a $50,000.00 loan, secured by special mortgage obtained from the Federal Land Bank. This loan was paid off in 1957.
On June 22, 1946, Mr. and Mrs. O'Neil Pollingue, Sr. sold 1,245 acres to their son, Eugene Pollingue. On June 29, 1946, several other transactions took place relative to this property:
(1) Eugene Pollingue sold a one-third interest in the same 1,245 acres back to the Pollingue community, however, Mrs. Zula Pollingue did not sign the act of sale;
(2) There was a credit sale from Eugene Pollingue to Karl Pollingue of a one-third interest in the same 1,245 acres for $16,350.00.
On June 29, 1946, there was a credit sale by O'Neil Pollingue, Sr. to Karl Pollingue of a one-third interest in another tract of property consisting of 1,421 acres for $30,775.00, however, Mrs. Zula Pollingue did not sign this act of sale.
On June 29, 1946, O'Neil Pollingue, Sr. also sold another one-third interest in the same 1,421 acres to Eugene Pollingue on credit for $30,775.00, and Mrs. Zula Pollingue also did not sign this act of sale.
Shortly thereafter, on August 29, 1946, the partnership of O'Neil L. Pollingue and Sons was created. The partnership's assets included approximately 2,666 acres of community and separate property belonging to Mr. and Mrs. O'Neil Pollingue, Sr. and property owned by Eugene and Karl *28 Pollingue. O'Neil Pollingue, Sr. and his sons, Eugene and Karl, were partners with each having a one-third ownership interest in this farm property.
In an affidavit filed by plaintiff on July 11, 1985, she stated that at the time of these transfers, she was attending college and had no knowledge of the farm activities. In her affidavit, plaintiff summarized her recollections of events at this point in time and stated that:
(1) She knew her mother had inherited a farm from her father, Dr. Richard;
(2) She knew that her parents had purchased some land during their marriage;
(3) She was aware that her brother, Eugene, was in charge of farming operations; and
(4) To the best of her recollection, O.L. Pollingue and Sons was a partnership for a rice mill that her brother, Karl Pollingue, had built and operated.
On November 16, 1955, the plaintiff, Hazel Pollingue, married W.J. Manion. Her father strongly opposed this marriage and as a result there was friction between plaintiff and her family which gradually became worse. At the hearing on the exception of prescription, there was testimony by the various defendants that between 1957 and February 1974, plaintiff had not visited her parents except to attend the funeral of her father, O'Neil Pollingue, Sr., in 1960.
On December 3, 1956, O'Neil Pollingue, Sr. sold his one-third interest in the farm property in the partnership to his three sons, O'Neil Pollingue, Jr., Karl Pollingue, and Eugene Pollingue. In exchange, he received $75,000.00 cash and retained a usufruct over the property. This usufruct was later relinquished on September 19, 1957. Mrs. Zula Pollingue did not sign this act of sale.
Shortly thereafter, on June 13, 1957, O'Neil Pollingue, Jr. decided to withdraw from the partnership and sold his one-third interest in the farm property to his brothers, Karl and Eugene.
O'Neil Pollingue, Sr. died testate on October 10, 1960. Several months later plaintiff consulted Mr. Henican, an attorney in New Orleans, where she was living at the time, and requested that he represent her interest in her father's succession proceedings. Mr. Henican consulted with a Mr. Boagni, who was an attorney in Opelousas where her father's succession proceeding was pending. At the hearing on the exceptions of prescription, plaintiff explained that after several discussions with Mr. Boagni, Mr. Henican reported that he was satisfied the succession was being properly handled, and therefore she made no further investigations on her own.
On March 23, 1961, Mrs. Zula Pollingue quitclaimed any and all interests in her separate and community property in favor of her three sons and their wives. The quitclaim deed was executed March 23, 1961, but was not filed until January 16, 1963. A Judgment of Possession transferring legacies to O'Neil Pollingue, Sr.'s heirs was rendered and signed on October 30, 1962, and a copy was mailed to plaintiff. The judgment recognized Mrs. Zula Pollingue as owner of one-half of certain community property and in addition, she was given legal usufruct over O'Neil Pollingue, Sr.'s one-half interest in the community property inherited by his children. O'Neil Pollingue, Jr. and the plaintiff were limited to an undivided one-sixth interest each of decedent's estate, payable in money, and subject to the usufruct of their mother. The other sons, Karl and Eugene, each received an undivided one-third interest of the decedent's estate subject to the usufruct of their mother. The community property listed in the judgment of possession included property in the City of Opelousas and a substantial number of shares of stocks and bonds. None of the farm property was listed in the judgment of possession as property of the estate of O'Neil Pollingue, Sr.
Plaintiff testified at the hearing on the exception of prescription that she never received a copy of the quitclaim deed executed by her mother, nor did she have any knowledge of whether Mr. Boagni or Mr. Henican received a copy. Plaintiff did admit that, even if she had known of the quitclaim deed, it would not have made any *29 difference since both of the wills of her mother and father contained a provision that she would not receive any land at all.
On May 21, 1974, Karl and Eugene Pollingue partitioned the total farm acreage which consisted of approximately 2,666 acres. Later, Karl Pollingue sold 600 acres that he acquired in the partition to his son, William, for $840,000.00.
Mrs. Zula Pollingue died testate on November 26, 1984. A few months later, on March 1, 1985, a Judgment of Possession was signed distributing the property in her succession. It is at this point in time that plaintiff claims she became aware of the various transfers of the farm property by her parents to her brothers. At the hearing on the exceptions, she testified that she had never seen any of the documents relative to the sale of the farm property until her mother's death. The provisions in Mrs. Zula Pollingue's will were similar to those contained in the will executed by O'Neil Pollingue, Sr. and limited O'Neil Pollingue, Jr. and the plaintiff to a one-sixth interest, payable in money, in their mother's estate while the other sons, Eugene and Karl, each received an undivided one-third interest in her estate. Plaintiff's legacy included a one-sixth share in money market accounts, certificates of deposits and $42,924.77, all of which she deposited in the registry of the court pending final litigation of this matter.
On February 15, 1985, plaintiff filed an action for collation and reduction seeking to have the Succession of O'Neil L. Pollingue, Sr. reopened. Plaintiff claims that her legitime was impinged and seeks reduction and/or collation of the farm property sold to her brothers. In addition, she is seeking damages from the executor and attorney for the estate, for not notifying her of the various transfers and for not including the farm property in her father's estate. In response, the defendants pleaded prescription of one year under LSA-C.C. Article 3492 as to the damage claim. In defense of the claims for reduction and/or collation, the defendants pleaded prescription of five years under LSA-C.C. Article 3497 and of ten years under LSA-C.C. Article 3499.
The district court heard evidence as to the exceptions of prescription on June 6, 1985. After reviewing the evidence the trial court ruled that the claims for reduction, collation, and damages had all prescribed. Plaintiff thereafter filed a timely devolutive appeal alleging the following assignments of error:
(1) The District Judge erred in failing to find that the O.L. Pollingue and Sons partnership had not been liquidated and in not including the farm acreage as an asset of O'Neil Pollingue, Sr.'s estate;
(2) The District Judge erred in not decreeing that the Judgment of Possession of O'Neil Pollingue, Sr. was obtained by fraud and ill practices;
(3) The District Judge erred in not decreeing that there was a breach of fiduciary duty by Dr. O'Neil Pollingue, Jr., the executor, and William E. Logan, attorney for the Succession of O'Neil Pollingue, Sr.;
(4) The District Judge erred in failing to decree that O'Neil Pollingue, Sr.'s estate was undervalued due to the illegal ratification of farm property transfers after the death of O'Neil Pollingue, Sr. thereby impinging on her legitime;
(5) The District Judge erred in not finding that the farm property sold to the three Pollingue brothers had never left the community of O'Neil Pollingue, Sr. and Mrs. Zula Pollingue;
(6) The District Judge erred in not finding that the plaintiff never had real or constructive notice of the various deeds of her father and the quitclaim deed of her mother.
As we feel it is dispositive of the various alleged assignments of error, we will first address the effects of prescription on plaintiff's claim for reduction, collation, and her action for damages against the executor and attorney for the Succession of O'Neil Pollingue, Sr.

PRESCRIPTION
Collation is the fictional or real return of property to a succession made by *30 an heir who has received, in advance, a share of his inheritance in order that such property may be divided among all the heirs together with the other effects of the succession. LSA-C.C. Art. 1227. Collation is the means by which the law seeks to assure the equal distribution of the ancestor's property among the direct descendents. Succession of Webre, 247 La. 461, 172 So.2d 285 (1965).
Anything given to children or the descendants by their ascendants, is not subject to collation if the donor formally expressed in his will that what he had given was an advantage or an extra part, unless the value of the objects given exceed the disposable portion, in which case the excess is subject to collation. LSA-C.C. Art. 1231. The obligation of collating is confined to children or descendants succeeding to their fathers' and mothers' or other ascendants' successions. LSA-C.C. Art. 1235.
The obligation to collate is presumed by law and may be made either in kind or by taking less. LSA-C.C. Arts. 1229, 1230, 1251.
An heir may demand collation of property sold by his mother or father to another child for no consideration or for a price less than one-fourth its value. LSA-C.C. Art. 2444; Russell v. Culpepper, 337 So.2d 226 (La.App. 3 Cir.1976), rehearing granted, 340 So.2d 315 (La.1976), aff'd, 344 So.2d 1372 (La.1977).
An action for collation is classified as a personal action under LSA-C.C. Art. 3499 (formerly Art. 3544) for purposes of prescription. Succession of Webre, supra; Milano v. Milano, 243 So.2d 876 (La.App. 1 Cir 1971).
Article 3499 provides:
"Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."
In Webre, supra, certain children and grandchildren of decedents sought to annul as simulations separate conveyances of land by the decedents to two other children. Alternatively, the plaintiffs prayed for collation of the property. The plaintiffs asserted that prescription as to their collation claim accrued only from the date they acquired knowledge of the conveyance, which is the same argument that is being asserted by plaintiff in the present case. There the court ruled that under Article 3544 (now Article 3499), "The action for collation prescribes in ten years from the death of the person to whose estate collation is sought." O'Neil Pollingue, Sr. died on October 10, 1960, and the plaintiff filed this action for collation and reduction on February 15, 1985, 25 years after the death of O'Neil Pollingue, Sr. The trial court correctly held that the claim for collation was clearly prescribed.
LSA-C.C. Art. 1502 provides, in pertinent part:
"Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum."
The applicable prescriptive period for reduction of an excessive donation is set out in LSA-C.C. Art. 3497 (formerly 3542) which provides:
"The following actions are subject to a liberative prescription of five years: ... An action for a reduction of an excessive donation; ..."
Prescription begins to run against an action to reduce an excessive donation on the date that the testament is filed for probate. Draper v. Van Leer, 197 La. 259, 1 So.2d 513 (1941); Succession of Dancie, 191 La. 518, 186 So. 14 (1939); West v. Gajdzik, 425 So.2d 263 (La.App. 3 Cir. 1982); Perrodin v. Clement, 254 So.2d 704 (La.App. 3 Cir.1971), writ den., 260 La. 604, 256 So.2d 642 (1972).
O'Neil Pollingue, Sr. died testate in 1960; his will was filed and probated and a Judgment of Possession was rendered and signed in his succession on October 30, 1962. Plaintiff's suit for reduction was filed in 1985, 23 years after this prescriptive period had accrued. Plaintiff was clearly aware of her father's will and its probate in his succession. The trial court *31 correctly held that plaintiff's claim for reduction had prescribed.
After reviewing the plaintiff's original petition and her appellate brief, it is unclear whether she is alleging that the various transfers of farm property were simulations or donations in disguise. Plaintiff states in her petition that there was a sale of real property to her brothers, Karl and Eugene, which impinged on her legitime and she asserts this to be a simulation requiring collation and reduction of O'Neil Pollingue, Sr.'s legacy. Plaintiff states in her brief that O'Neil Pollingue, Sr. executed simulated sales of community property without Mrs. Zula Pollingue's approval; and, this approval was not secured prior to, but some six months after, O'Neil Pollingue, Sr.'s death when Mrs. Zula Pollingue executed a quitclaim, and after plaintiff was vested by seizin with her interest in her father's estate. It is plaintiff's contention that under these conditions, the Pollingue farm property never left the community of the decedent, O'Neil Pollingue, Sr., and thus, it remains in her father's estate to be transferred to the forced heirs.
Plaintiff alleges in further support of this argument that a note given by Karl Pollingue to O'Neil Pollingue, Sr. on June 29, 1946, as partial payment for the acreage he had acquired, was never paid off. Plaintiff further alleges that a note given by Eugene Pollingue to O'Neil Pollingue, Sr. on June 29, 1946, for his one-third share of the acreage he acquired was also not paid off.
The Supreme Court in Owen v. Owen, 336 So.2d 782 (La.1976), explained the difference between a simulated sale and a donation in disguise as follows:
"In our law, a simulation is a transfer of property which is not what it seems. Simulations are of two types: pure simulations, and disguised transfers. In a pure simulation, sometimes called a non-transfer, the parties only pretend to transfer the property from one to the other, but in fact both transferor and transferee intend that the transferor retain ownership of the property. When this type of simulation is successfully attacked, the true intent of the parties is revealed, which was that no transfer had in fact taken place. In a contest between a vendor and vendee in this situation the true intent of the parties is effectuated and the courts hold that no transfer took place because the simulated sale is an absolute nullity. Successions of Webre, 247 La. 461, 172 So.2d 285 (1965); Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932); Milano v. Milano, 243 So.2d 876 (La.App. 1st Cir.1971). The other type of simulation is a disguised transfer which seems on its face to be a valid sale, but which is intended by the parties to be a gift rather than a sale. When this sort of simulation is attacked successfully, as it has been here under Article 2444, the true intent of the parties is likewise effectuated by the law. A valid transfer has taken place, but its form is a donation rather than a sale and the Code articles on donations apply to the transfer. Stevens v. Stevens, 227 La. 761, 80 So.2d 399 (1955); Carter v. Bolden, 13 La.App. 48, 127 So. Ill (La.App. 2nd Cir.1930); 35 La.L.Rev. 192 (1974); 25 La.L.Rev. 313 (1965)." (Footnote omitted.)
See also, Bordelon v. Bordelon, 499 So.2d 1050 (La.App. 3 Cir.1986).
In her appellate brief, plaintiff cites Johnston v. Spears, 459 So.2d 197 (La.App. 3 Cir.1984), in which we stated that under LSA-C.C. Article 2239 (now C.C. Arts. 2028, 2021, 2035):
"Forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, they shall not be restricted to the legitime."
Under this article, the effect is not to return conveyed or donated property to a succession, but to declare that such property, in reality, never left the patrimony of the decedent. This article and its effect should not be confused with Civil Code article 2444, under which a sale of immovable property by parents to children for less than one-fourth of the property's fair market value at the time of *32 sale may be attacked by forced heirs. Under article 2444, the transfer from decedent's patrimony is admitted, but the sale is attacked as, in reality, a donation of property subject to collation. Similarly, Civil Code article 1248 provides that a sale to a child at a low price may be attacked by forced heirs. Again, there is no denial of an actual transference of property, but the advantage bestowed by a sale at a low price is treated as a donation subject to collation."
If the plaintiff can show that any of the transactions involving the farm property were simulated sales, the Succession of O'Neil Pollingue, Sr. can be reopened and the property in question can be distributed to the forced heirs since an action in simulation is imprescribable. Webre, supra, 172 So.2d at page 289; Milano, supra, at page 879. But, if any consideration whatsoever was paid, the transactions may not be set aside as a simulation, and as such, plaintiff's only action will be one for collation or reduction which clearly have prescribed.
After a thorough review of the record, we find no evidence which indicates that any of the sales or transactions were simulations. Assuming, arguendo, that personal notes given to O'Neil Pollingue, Sr. were never paid off, there is sufficient evidence to show that O'Neil Pollingue, Sr. received a substantial portion of the purchase price. The 1946 sales of farm property to Karl and Eugene Pollingue were partly financed by assumption of loans from the Federal Land Bank which have been paid off. Given these facts the plaintiff's only action is one for collation or reduction which we have found to be prescribed.
After having addressed the prescriptive period applicable to actions for collation and reduction, we must examine whether plaintiff's claim for damages against the executor and attorney for the estate have prescribed. Unless otherwise provided by legislation, personal action is subject to a liberative prescription of ten years. LSA-C.C. Art. 3499. The Legislature has provided a shorter prescriptive period for delictual actions. LSA-C.C. Art. 3492 provides:
"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."
Any tort claim against Mr. Logan or O'Neil Pollingue, Jr. for breach of fiduciary duty would be classified as a delictual action and as such would have prescribed October 30, 1963, one year after the judgment of possession was signed. Given the fact that an action for collation could not prescribe until October 10, 1970, the latest possible date that the plaintiff could have filed an action for damages would have been October 10, 1971. In either case, plaintiff's action for damages filed on February 15, 1985, against Mr. Logan and Dr. O'Neil Pollingue, Jr. has clearly prescribed.
The prescriptive period for actions against a succession representative is set out in LSA-R.S. 9:5621 which provides:
"Actions against any person who has served as a curator of a vacant succession or as administrator, testamentary executor, or dative testamentary executor of a succession in this state, or against the surety on his bond, arising out of any act the succession representative, as such, may have done or failed to so, are prescribed by two years, reckoning from the day of the judgment homologating the final account."
As the Judgment of Possession in the estate of Mr. O'Neil L. Pollingue, Sr. was rendered and signed on October 30, 1962, any claims against the testamentary executor, O'Neil Pollingue, Jr., or the attorney, Mr. Logan, for damages arising out of the settlement of the estate also have prescribed.

INTERRUPTION OF PRESCRIPTION
Having found that plaintiff's claim for reduction, collation, and damages have prescribed, we must determine whether any facts exist which will interrupt that prescription. Plaintiff contends that prescription has not run because of the doctrine of contra non valentem. Plaintiff argues that contra non valentem should be applied to *33 interrupt prescription because (1) she did not sustain any damage and (2) there was no cause of action when she received notice of the Judgment of Possession. In support of her later claim she argues that she did not get a copy of her mother's quitclaim deed nor did she receive notice when the quitclaim deed was executed and recorded.
LSA-C.C. Article 3467 provides that prescription runs against all persons unless they are included under some exception provided by law. Despite this express statutory provision, Louisiana courts have applied the doctrine of contra non valentem to very limited circumstances to prevent the running of liberative prescription "where in fact and for good cause, a plaintiff is unable to exercise his cause of action when it accrues." Corsey v. State Dept. of Corrections, 375 So.2d 1319, 1321 (La.1979).
Prescription does not run against a party who is ignorant of the existence of facts that would entitle him to bring this suit, where such ignorance is not willful and does not result from negligence. Rayne State Bank & Trust v. National Union Fire Ins. Co., 483 So.2d 987 (La. 1986); Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970); Walter v. Caffall, 192 La. 447, 188 So. 137 (1939). The prescriptive period begins to run on the date that the injured party discovered or should have discovered the existence of facts that will entitle him to bring the suit. The Louisiana Supreme Court stated in Cartwright v. Chrysler Corporation, supra:
"It is not necessary that the party have actual knowledge of the conditions as long as there is constructive notice. Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of everything to which inquiry may lead and such information or knowledge as ought to put the plaintiff on inquiry is sufficient to start the running of prescription."
The Louisiana Supreme Court in Corsey, supra, listed four categories of situations where Louisiana courts have applied the doctrine of contra non valentem to prevent the accrual of liberative prescription: (1) Where there is some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevent the creditor from suing or acting; (3) where the debtor himself has done some act to effectively prevent the creditor from availing himself of this cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not caused by the defendant.
Plaintiff claims that the third and fourth exceptions are applicable in this case. She alleges that she was not aware that she had a cause of action because she did not receive notice of the quitclaim deed which prevented her from discovering the prior transfers of property until the succession of Mrs. Zula Pollingue was opened. She also argues that contra non valentem should be applied because defendants allegedly committed acts, including concealment, fraud, misrepresentation, or other ill practices which prevented her from asserting her cause of action.
After reviewing the entire record, we find that there is no evidence to show that any of the defendants engaged in any conduct which might have prevented plaintiff from asserting her right or that plaintiff's cause of action could not be ascertained or was not reasonably ascertainable by the plaintiff at the time of rendition of the Judgment of Possession in her father's succession.
At the hearing on the exception of prescription, plaintiff admitted receiving a copy of the Judgment of Possession. When asked what attorneys had been contacted relative to her father's succession, she stated that a Mr. Boagni in Opelousas and a Mr. Henican from New Orleans had been contacted. After a thorough investigation of the succession proceedings by both attorneys she was assured that nothing was improper. In addition, the plaintiff was aware of her father's death; she attended his funeral and admitted in her petition *34 that she received a copy of the Judgment of Possession placing all his forced heirs into possession of the property in his estate.
After a review of the jurisprudence, we find that there is no legal justification for holding that prescription should be suspended in the case at bar because plaintiff failed to receive notice of the quitclaim deed executed by her mother in regard to her interest in her separate or community property sold to plaintiff's brothers. As pointed out by the defendants in their appellate brief, the quitclaim deed, executed by Mrs. Zula Pollingue after the death of her husband and recorded January 16, 1963, is a document which could not affect an action for reduction or collation in O'Neil Pollingue, Sr.'s estate; and even assuming it had some effect, the document was publicly recorded twenty years before plaintiff finally initiated her suit in this matter.
According to the Louisiana Public Records Doctrine, third persons need only look to the public records to determine adverse claims. La.C.C. Art. 3342; 3347; Bordelon v. Bordelon, supra; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). We find no merit in plaintiff's claim that prescription should be interrupted because she had no notice of the fact that all of the various sale documents and the quitclaim deed were publicly recorded. In plaintiff's affidavit filed on July 11, 1985, she states she knew that her parents had purchased some property during their marriage. The descriptive list of property in the Judgment of Possession included several pieces of immovable property in the City of Opelousas, but did not include the several thousand acres of farm property owned and acquired by Mr. and Mrs. O'Neil Pollingue, Sr. during their marriage. This knowledge was sufficient to put plaintiff on notice that there had been prior transactions involving the farm property of her mother and father. After having taken no action for twenty-five years plaintiff cannot now bring an action and defeat prescription by claiming she did not have notice of the transactions involving the farm property. Plaintiff was put on notice by the Judgment of Possession in her father's succession sufficient to excite her attention and call for further inquiry relative to the farm property.
In another attempt to defeat prescription plaintiff claims that a partnership agreement entered into by the decedent, O'Neil Pollingue, Sr., in 1946, which partnership she further claims acquired the farm property and was never liquidated, now allows her to make a claim for reduction, collation, or damages. Even if plaintiff was correct that this partnership was never liquidated, the partnership agreement was a publicly recorded document, of which she is assumed to have constructive knowledge. Any claim of the partnership to ownership of any of its property would be a right of the partnership, not the succession of O'Neil Pollingue, Sr., and even if there was a partnership claim, it would have prescribed by 1985 and such a claim could not be asserted through a claim for reduction or collation in a partner's succession.
An appellate court may not disturb a trial court's evaluations of credibility and factual determinations unless the record reveals that the trial court's decision is manifestly erroneous or clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After reviewing the record, we cannot say that the trial court erred in sustaining the defendant's exceptions of prescription.

FRIVOLOUS APPEAL
Defendants have answered this appeal seeking damages for a frivolous appeal under C.C.P. Article 2164.
The standard to be applied in making this determination was set out in Bellard v. Safeway Insurance Company, 442 So.2d 1314 (La.App. 3 Cir.1983):
"Appeals are favored in our law. We are reluctant to impose the penal provisions of LSA-C.C.P. Article 2164 which provides for the award of damages for frivolous appeal. Such damages will be awarded only when it manifestly appears that the appeal was taken solely for the purpose of delay or that appealing counsel *35 does not seriously believe in the position he advocates, even though the appeal lacks serious merit. Goad v. May, 376 So.2d 340 (La.App. 3 Cir.1979)."
In the case at bar, we do not find this appeal to be frivolous. For this reason, defendants' claim for damages is denied.
For the reasons assigned, the judgment of the trial court maintaining defendants' pleas of prescription are affirmed. All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.